15011

GENTRY v. RECREATION, INC.

(7 S. E. (2d), 63)

August, 1939.

*Messrs. Wyche, Burgess & Wofford,* for appellant,

Messrs. *Johnson & Johnson,* for respondent,

February 6, 1940.

The opinion of the Court was delivered by MR. L. D. LIDE, ACTING ASSOCIATE JUSTICE.

On October 14, 1936, O. E. Dooly and Constance D. Dooly, as lessors, executed a lease to J. Francis Drake, as lessee, for a certain building on South Main Street in the City of Greenville for the terms of five years commencing November 1, 1936, and ending October 31, 1941, at a rental of $350.00 per month, payable in advance on the first day of each month for the first three years of the lease, and $400.00 per month, payable in advance on the first day of each month for the last two years of the lease. The lease contains the following clause: "If the business is discontinued or the premises vacated before the expiration of the lease, then full rental price for the whole of the unexpired term shall become immediately due and payable." The lease was executed both by the lessors and the lessee and probated as to all of them, but was never recorded.

J. Francis Drake, the lessee, equipped the premises with furniture and fixtures, at a cost price of approximately $23,-000.00, and operated thereon a restuarant, pool room and bowling alley under the trade name of "Sir Francis"; and continued so to operate the same until June 23, 1937, when he executed a bill of sale to his brother, John F. Drake, for all his property and rights in connection with the business, including his "interest in leases," and this bill of sale was duly recorded. The lessors, however, were not notified and there was no formal assignment of the lease. John F. Drake continued the business until on or about September 15, 1937, when he sold out to Sam Lovitt for $8,531.74, of which $6,-

000.00 was paid in cash. The balance was represented by a series of promissory notes given by Lovitt to John F. Drake and secured by a conditional sales contract covering the personal property, in legal effect a chattel mortgage, and will hereinafter be so called. The chattel mortgage was dated September 15, 1937, and duly recorded October 25, 1937.

In connection with this transaction J. Francis Drake executed an assignment of the lease to Sam Lovitt, this assignment being dated September 18, 1937, and the lessors agreed to the arrangement, the lease being modified in a particular, immaterial here, and the rent was increased $50.00 a month from October 1, 1937.

John F. Drake gave to his brother J. Francis Drake seven of the Lovitt notes in the sum of $200.00 each, dated September 15, 1937, and maturing on the 15th day of each month commencing with the month of January, 1938. J. Francis Drake took these notes to his brother-in-law, Jack L. Gentry, in Spartanburg, who endorsed them and thus procured for him the full principal amount thereof, to wit, $1,400.00. The notes were discounted by the Citizens and Southern Bank, but Lovitt failed to pay the first note, maturing January 15, 1938, and upon the demand of the bank Mr. Gentry then took up all the notes, and is now the owner and holder thereof, none of which has ever been paid.

Meanwhile Lovitt continued to operate the business as usual and paid the rent as it matured through the year 1937, but on January 1, 1938, he failed to pay the $400.00 monthly rent then due, and about January 15, 1938, ceased to operate the business, locked the doors and delivered the keys to his attorney who delivered them to C. G. Wyche, Esq., whose firm were attorneys for the lessors.

Thereafter, to wit, on January 21, 1938, a distress warrant was issued by the landlords for rent in the sum of $19,600-.00, that being the full amount of the rental price for the remainder of the five-year term of the lease. A distress was levied under this warrant on January 27, 1938, and the

property so distrained was appraised at $6,000.00. When Jack L. Gentry learned of the distress proceedings he came to Greenville and interviewed the attorneys for the lessors, to whom he offered to pay the rent which had accrued under the lease, provided he could remove the distrained property from the premises. The lessors through their attorneys, however, refused to accept this offer and expressed their unwillingness for the property to be removed unless Gentry would assume full responsibility for the entire amount of the rent claimed, to wit, $19,600.00, as stated in the distress warrant. While there is some uncertainty suggested in the testimony as to whether the lessors required the full amount to be paid in cash, or were willing for Gentry to assume the lease, it is uncontradicted that they expected him to be ultimately responsible for the full amount of the rent which they claimed.

The distrained property, having been advertised for sale, was sold at public auction on February 21, 1938. Gentry was present at the sale with his attorney who protested the sale on the ground that Gentry's claim as a mortgagee was a preferred claim, but the sale proceeded and the property was bid off by Mr. Wyche as attorney for the lessors at and for the sum of $500.00; and a bill of sale was later executed by the lessors to Recreation, Inc., a corporation, which operated the business for several months when the premises were destroyed by fire, including the property involved herein.

In the meantime, to wit, on March 25, 1938, this action was commenced by Jack L. Gentry as plaintiff against Recreation, Inc., as defendant, for the recovery of the personal property in question, the plaintiff alleging that he was the owner of and entitled to the possession thereof, the ground of his claim being the chattel mortgage securing the notes held by him. The defendant denied the material allegations of the complaint, and the cause came on to be tried before Honorable G. Dewey Oxner, presiding Judge, and a jury,

at the May, 1939, term of the Court of Common Pleas for Greenville County.

At the close of all the testimony the defendant moved for a directed verdict upon the ground that the evidence in the case showed "that the landlord's lien for rent and the title acquired by the distress warrant for rent are superior to any claim the plaintiff might have in the property." There was no motion by the plaintiff for a directed verdict. The Court overruled the defendant's motion and submitted the cause to the jury which found for the plaintiff, assessing the value of the property at $1,400.00, which it will be remembered was the precise principal amount of the seven notes held by Mr. Gentry. Judge Oxner overruled the defendant's motion for a new trial, and the cause comes before us upon the exceptions set forth in the record.

(There being no objection on the part of counsel for appellant, the Transcript of Record will be deemed amended in accordance with the printed motion of counsel for respondent.)

There are thirteen exceptions, each of which is elaborately stated, but in their brief under the head of "Questions Involved" counsel for the appellant reduce the exceptions to five questions, and they further correctly state that the thirteen exceptions really raise but one issue, and that is whether or not the appellant acquired good title and right to retain possession of the furniture and fixtures in question; and that an inquiry into this matter would only involve two questions, the first of which is stated by them as follows: "(1) Is a provision in a lease for a term of years providing for an acceleration of rent installments so as to make the rent for the entire term due upon the happening of a specified contingency valid and enforceable?"

· More precisely, the question to be determined is whether such an acceleration clause would authorize a landlord to distrain for rent which had not been earned or accrued.

The question thus presented is an interesting one and of novel impression in this State. The view taken by appellant is that such a clause is effective for this purpose because, among other things, it is a well-established principle that if a debt is payable in installments it is perfectly legal to provide that upon failure to meet any installment, or in certain other contingencies, the entire amount of the debt shall become immediately due and payable. There is, however, quite an obvious difference between the acceleration of an ordinary debt and the acceleration of rent. In the case of an ordinary debt the debtor has already received the entire consideration, either in money or in property, while in the case of rent an acceleration would require him to pay for that which he has not yet received. In the case of *Welborn v. Cobb,* 92 S. C., 384, 75 S. E., 691, an acceleration clause was recognized as valid; but in that case the indebtedness was for the purchase money of the property which had been acquired by the debtor or mortgagor.

It was Judge Oxner's view that decisions from other states were of negligible value in the consideration of this question, for the reason that in many states the right to distrain for rent is almost wholly a statutory right, if it exists at all, while in this State the common law prevails with very minor statutory modifications. However, we may take at least a cursory glance at some of the decisions from other states, most of which are cited in the very valuable annotation found in 58 A. L. R., at page 300, entitled, "Validity and effect of acceleration clause in lease or bailment." There are a number of decisions from the State of Pennsylvania holding that an acceleration provision in a lease is valid and enforceable, but as stated by the annotator, in other jurisdictions the question is unsettled, and there are cases to the effect that such a provision for acceleration constitutes an attempt to provide for liquidated damages in the event of default or breach by the lessee, and that since the amount provided for is not determined with relation to the actual

damages received the clause constitutes a penalty, unenforceable against the lessee.

In the case of *In re. Barnett,* 12 F. (2d), 73, 78, the ■■ Circuit Court of Appeals for the Second Circuit, in a well-considered opinion, makes the following statement: "The provision in the lease giving the landlord the right to recover the total amount of the rent for the term less the rent actually paid upon default in *any* covenant or condition contained in a lease is, under New York law, illegal. It is regarded, not as liquidating the damages, but as a penalty. As such it is unconscionable and cannot be enforced."

There are a few other decisions to a like effect cited in the annotation mentioned above, but of course acceleration clauses may vary greatly in their terms, and we are concerned here only with the particular clause in the lease before us. While this clause might not be considered unconscionable, we think it may be justly and reasonably construed as in the nature of a penalty and thus so far enforceable as to support a cause of action in favor of the lessors against the lessee for the actual damages sustained, the measure of which must be affected by the duty of minimizing damages, especially since the removal by the lessee had the effect of restoring the possession of the premises to the lessors. But we are definitely of the opinion that the lessors were not entitled to the remedy of distress for such unearned future rent or rather for such unliquidated and undetermined damages. Manifestly the lessors in the instant case could not claim that they were entitled to the full amount of the rent for the remainder of the term of the lease and also the right to the possession of the premises. See *Simon v. Kirkpatrick,* 141 S. C., 251, 139 S. E., 614, 54 A. L. R., 1348. We do not, however, deem it necessary to determine whether the lessors accepted the surrender by the lessee and thereby deprived themselves of the right of distress regardless of the construction of the acceleration clause, for while this is ad-

verted to in the order of Judge Oxner refusing a new trial, it does not appear to have been raised during the course of the trial of the cause.

It is of historical interest to observe that the process of distraint, which is termed the oldest form of *self-help,* remains as a part of the South Carolina law. This unique remedy is an inheritance from the common law which has been preserved as nearly inviolate as modern conditions would permit. It is indeed obvious enough that the common law had no conception of accelerated rent, because rent originally was defined to be a certain profit issuing yearly out of lands and tenements corporeal, and, as Blackstone says, "it ought to be reserved yearly, because those do annually arise and are annually renewed." Jones' Blackstone, Vol. 1, page 769. Of course the conception of rent has been much enlarged in modern times, and this is merely cited to illustrate that the idea of accelerated rent would not have been recognized at common law.

Blackstone, the great commentator, further says: "It was observed in a former volume, that distresses were incident by the common law to every *rent service,* and by particular reservation to *rent charges* also; but not to *rent-seck,* till the statute 4 George II, c. 28 (Landlord and Tenant, 1730), extended the same remedy to all rents alike, and thereby in effect abolished all material distinction between them. So that now we may lay it down as an universal principle, that a distress may be taken for any kind of *rent in arrears;* the detaining whereof beyond the day of payment is an injury to him that is entitled to receive it." (Italics as to rent in arrears added.) Jones' Blackstone, Vol. 2, page 1499.

In the frequently cited case of *Fidelity Trust & Mortgage Co. v. Davis,* 158 S. C., 400, 155 S. E., 622, Mr. Justice Blease, afterwards Chief Justice, discussed with much learing the law of distress, and states as the five conditions thereof: (1) distress must be for rent only; (2) when the relation of landlord and tenant exists;

(3) when the rent reserved is certain; (4) *when the rent is in arrears*; and (5) when the property belongs to the tenant in his own right. The fourth condition is qualified by reference to the statutory provision now contained in Section 8822, Code, 1932, which is as follows: "Should any tenant, for years or lesser period, remove from any demised premises before the expiration of the term for which said premises were demised, leased or rented, then and in such case the rent which would be earned up to the end of the month in which the tenant leaves shall be immediately due and payable; and it shall be lawful for the landlord at any time within ten days after the removal of such tenant to issue his distress warrant for such an amount as may be due up to the expiration of the month in which the tenant leaves the premises."

The section quoted is quite illuminating here, for if a distress warrant may be issued for the unearned rent for the entire remainder of the term of a lease merely by virtue of a provision in the lease to the effect that if the tenant vacates the premises the rental price for the whole of the unexpired term shall become immediately due and payable, this would render the statute substantially nugatory and meaningless.

It will thus be seen that both at common law and under our statutes, with the single statutory exception above mentioned, a distress warrant cannot be issued except for rent *in arrears*. And it is our considered judgment that rent cannot be deemed in arrears merely by virtue of a clause in the lease attempting to accelerate the future and unearned rent by reason of the vacating of the premises before the expiration of the term. Certainly, such a limitation upon the rather extraordinary remedy of distress cannot be deemed unjust or unreasonable.

The second question stated by counsel for appellant in their brief is as follows: "(2) Who has a superior claim on the furniture and fixtures of a tenant, the landlord for the

payment of the rent or the mortgagee of the tenant for the payment of a mortgage indebtedness?"

So far as the *accrued* rent is concerned, this question is wholly academic, because, as stated by Judge Oxner, the evidence admits of no inference other than that the plaintiff Gentry offered to pay the accrued rent and did everything he could to that end, but that the same was refused by the landlord.

Referring to the *unearned or future* rent under the acceleration clause: Section 8804, Code, 1932, expressly provides that all leases in writing for a longer term than twelve months shall not be valid in law against the rights and claims of third persons unless recorded within forty days from the time of execution thereof. The provision with reference to forty days is a strange bit of legislative oversight because long since repealed with regard to other recording statutes. But Section 8804 as written remains the law of the State, and it is admitted that the lease here was not recorded. Hence counsel for appellants in their reply brief say that it is true as against innocent third parties a lease for more than a year is not valid in law unless recorded, but that the respondent claiming as an equitable assignee stands in the shoes of the original mortgagee who took with actual notice of the existence and contents of the lease, and that since such mortgagee was not an innocent third party the respondent can claim no greater right, having never secured a written assignment of mortgage. It is quite true that John F. Drake, the original mortgagee, had actual notice of the lease and would be bound thereby, but Jack L. Gentry, the respondent herein, was a holder in due course of *negotiable* notes (secured by the chattel mortgage) which he had acquired from the bank which acquired the same *before any one of them had matured*. Sec. 6809, Code, 1932. Negotiable Instruments Act. *Farr-Barnes Lumber Co. v. Town of St. George,* 128 S. C., 67, 122 S. E., 24.

We are, therefore, of opinion from the record in this case that the respondent stands in the impregnable position of a wholly innocent third party, and hence would not be bound by the acceleration clause in the lease, even if it could be construed as conferring the right of distress, notwithstanding the fact that there was no formal written assignment of the chattel mortgage. For it is a familiar elementary principle that a chattel mortgage is a mere incident of the debt which it secures, and hence the assignment of the debt *ipso facto* carries the mortgage with it. 10 Am. Jur., 839. This would be true even if the holder of the debt were not informed by the mortgage security, but here both Gentry and the bank were informed in regard to the mortgage, for it was exhibited to them. A clear statement of the principle involved is the following from the opinion of the United States Supreme Court by Mr. Justice Peckham in the case of *National Live Stock Bank v. First National Bank,* 203 U. S., 296, 27 S. Ct., 79, 80, 51 L. Ed., 192: "The note executed by Grimes for eleven thousand and some odd dollars was negotiable, and the chattel mortgage was given at that time to secure the payment of the note. The indorsement of the note and its delivery before maturity to the defendant by the payee of the note transferred its ownership to the defendant bank. This transfer also transferred, by operation of law, the ownership of the mortgage, which was collateral to the note."

Of course such an assignee is sometimes termed an equitable assignee, but he has substantially every right that a legal or formal assignee would have, especially in this State where actions are required to be brought in the name of the real party in interest. And so far as the question of notice is concerned, it seems to us that clearly he occupies precisely the same position that the holder of a formal written assignment would occupy.

It is quite obvious that the case cited by counsel for the appellant, to wit, *Motor Dealers Credit Corporation v. Heise,*

*Sheriff*, 166 S. C., 389, 164 S. E., 900, is not controlling here, for that case related to a license tax lien which under the statutory law of the State is a preferred lien having a superior rank even to a duly recorded mortgage.

We have carefully considered each of the exceptions, including every point raised thereby, whether hereinbefore referred to or not, and our conclusion is that they should all be overruled. The judgment of the Circuit Court is, therefore, affirmed.

Mr. Chief Justice Bonham and Messrs. Justices Carter, Baker and Fishburne concur.