15539

SPEIZMAN v. GUILL

(25 S. E. (2d), 731)

November, 1942.

*Mr. C. T. Graydon* and *Mr. F. Ehrlich Thompson,* both of Columbia, S. C., Counsel for appellant,

*Messrs. Melton & Belser* and *Mr. T. P. Taylor,* all of Columbia, Counsel for Respondent,

May 10, 1943.

CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, delivered the unanimous opinion of the Court:

This action was commenced by plaintiff against defendant to assert certain rights claimed by plaintiff concerning a balance of purchase-money alleged to be secured by certain laundry and cleaning machinery and equipment, sold by plaintiff to defendant under a conditional sale or title-retention contract. Whether those rights, as set forth in the complaint, constitute a legal or an equitable cause of action is the question. The defendant answered admitting certain allegations of the complaint, denying other allegations and setting up a counterclaim for damages for alleged delay, failure to deliver some of the parts, defects and unfitness for use of certain parts and in other respects, to his damage in the sum of three thousand dollars.

Plaintiff thereafter moved for an order referring the cause to the Master to take testimony, which defendant opposed. The Judge below issued a general order of reference. Let it be reported. From such order this appeal has been taken by defendant.

The respective parties are in disagreement as to the character of the action and the nature of the cause of action set forth in the complaint. However, in the appeal briefs both sides have stated the questions for decision upon this appeal in the same words, as follows:

"I. Does the complaint set forth a cause of action for the recovery of personal property or does it set forth a cause of action for the foreclosure of a chattel mortgage?

"II. Did the trial Judge err in granting a compulsory general order of reference under the facts and circumstances of this case?"

In order to determine the character of the cause of action it is necessary to examine the complaint, which is as follows:

"The plaintiff above named complaining of the defendant herein alleges:

"(1). That the defendant, Berlin J. Guill, is a resident of the County of Richland, State of South Carolina, and is now and was at the times hereinafter mentioned doing business in or near the City of Columbia, S. C., as the Crown Cleaners and Laundry. That the property hereinafter mentioned is located in Richland County and is within the jurisdiction of this Court.

"(2). That heretofore on or about the 8th day of July, 1941, the defendant purchased various pieces of dry cleaning equipment from the plaintiff for which he agreed to pay the sum of Twenty-nine Hundred and One and 25/100 ($2901.25) Dollars. Of this sum Five Hundred ($500.00) Dollars was paid upon delivery of the equipment and the sum of Twenty-four Hundred and One and 25/100 ($2401.25) Dollars was payable in twenty-four (24) successive monthly installments as follows:

"Seventy-five ($75.00) Dollars a month for three (3) months. One Hundred ($100.00) Dollars a month for eighteen (18) months. One Hundred Twenty-five ($125.00) Dollars a month for two (2) months and One Hundred Twenty-six and 25/100 ($126.25) Dollars for one month.

"Said installments being payable on the 7th day of each and every month from the date of the instrument until the balance of Twenty-four Hundred and one and 25/100 ($2401.25) Dollars was fully paid, the unpaid balance to bear interest at the rate of six (6%) per centum per annum and from maturity at the highest lawful rate.

"(3) That in order to secure the payment of the purchase price of said fixtures, the defendant on the same day, to wit: July 8, 1941, did make, execute and deliver to the said Morris Speizman his certain conditional sales contract and did by way thereof convey, sell and assign to this plaintiff the following chattel property to wit:

1 Prosperity Flat Work Press, Lot No. 1094, Serial No. 61340.
1 Rebuilt 32 x 48 Washer, Lot No. 1064.
1 Collar & Cuff Prosperity Press, Lot No. 1115.
1 Electric 7½ h.p. 3/60/220 V. Motor.
15 Foot Shafting 1-11/16" bore at 25¢ per foot.
3 15" Hangars at $3.50 each.
2 Drive Pulleys at $3.50 each.
1 Large Master Pulley.
1 American 30" Extractor, belt driven. .
1 Talley 36 x 96 Wood Washer (used).
1 New Bosom Press, Model NLB-1.
1 New Double Sleever (DS-1).
1 Heubsch Tumbler.
1 Prosperity 39" tapered buck foot power press.

"(4) That said conditional sales contract was filed for record in the office of the Clerk of Court for Richland County, State of South Carolina, in Chattel Mortgage Book number 228, at page 424, on the 11 day of July, 1941.

"(5) That by and according to the terms and conditions of said conditional sales contract the defendant covenanted and agreed:

"* * * Time is the essence hereof and if any of said indebtedness shall become due and remain unpaid or if chattel be removed or any attempt be made to remove the same or if the same be in anywise disposed of or encumbered or an attempt to do so be made, or whenever you shall deem yourselves or your assigns shall deem themselves insecure, or should any surety company on any bond guaranteeing performance of any of my (our) obligations hereunder, or indemnifying you or your assigns or the holder of said note against loss through conversion or otherwise, desire to withdraw such bond, then, in any of the aforesaid cases, all of the unpaid installments shall become due and payable forthwith and I (we) agree to return said chattel on demand, and you and your assigns may without demand or notice and with or without legal process enter into any premises where said chattel may be and take possession thereof and make such disposition as may be deemed by you or your assigns desirable and all payments made shall be retained as liquidated damages for the use of said chattel and not as a penalty, or said chattel may be sold, without having the chattel present at the place of sale and with or without notice, at private or at public sale at which you or your assigns may purchase, and the proceeds thereof, less expenses or retaking, repairing, holding and reselling such chattel and less 15% of the then unpaid balance, or at the option of you or your assigns a reasonable sum, as attorney's fees, credited upon the amount unpaid and in either event, I (we) agree to pay the balance forthwith as liquidated damages for the breach of this contract, the surplus, if any, to be paid to me (us)* * *.

"(6). That due to the defendant's failure to live up to the terms of the conditional sales contract the New Bosom Press, Model NLB-1 and the New Double Sleever (DS-1) mentioned in the conditional sales contract were not deliver-

ed and any claim therefor that the plaintiff might have is hereby expressly waived. The total prices of the aforesaid fixtures will not be included in the amount of judgment demanded by the plaintiff.

"(7). That the terms and conditions of said conditional sales contract have been broken, the defendant having failed to pay the monthly instalments as they severally came due and that there is a balance of Twenty-two Hundred Sixty-one and 25/100 ($2261.25) Dollars, with interest thereon at the rate of six (6%) per centum per annum from the 8th., day of July, 1941, now due and owing the plaintiff for which demand has been made and payment refused. That said chattel property is now situated in the County of Richland, State of South Carolina, in the possession of the said defendant. That demand upon defendant for possession of said property has been made but that same has been refused.

"Wherefore this plaintiff prays judgment against the defendant:

"(1). For the sum of Twenty-two Hundred Sixty-One and 25/100 ($2261.25) Dollars, with interest thereon from the 8th., day of July, 1941, attorney's fees of 15% and for the costs of this action.

"(2). That plaintiff's conditional sales contract be foreclosed, the equity of redemption be barred and the mortgaged chattel property be sold, and the proceeds thereof applied; first, to the payment of said mortgage debt with interest thereon; second, to the payment of attorney's fees, and costs."

Except for certain possible differences, not material to the question here under consideration, pointed out but not decided in *Brockinton v. Lynch,* 119 S. C., 273, 309, 112 S. E., 94, a conditional sale contract is in legal effect tantamount to a chattel mortgage, and the present action for simplicity may be considered as if it were upon a chattel mortgage. *Talbott v. Sandifer,* 27 S. C., 624, 4 S. E., 152; *Perkins v. Bank,* 43 S. C., 39, 20 S. E., 759; *Hill v.*

*Winnsboro Granite Corp.*, 112 S. C., 243, 99 S. E., 836; *Stokes v. Insurance Company*, 130 S. C., 521, 126 S. E. 649; *Soulios v. Mills Novelty Company*, 198 S. C., 355, 17 S. E. (2d), 869.

The remedies open to a chattel mortgagee when the mortgage becomes past due are set fort in *Stokes v. Liverpool, London & Globe Insurance Company*, 130 S. C., 521, 126 S. E., 649, 652: "When a chattel mortgage becomes past due, the mortgagee has three remedies for realizing upon his security: (1) He may peaceably take possession of the chattel, advertise and sell and apply the proceeds of sale to his secured debt, paying the surplus, if any, to the mortgagor; (2) if possession be refused, he may institute claim and delivery proceedings to get possession of the chattel for the purpose of sale as in the first instance; (3) he may institute a proceeding similar to the foreclosure of a mortgage of real estate."

The right of a chattel mortgage to a foreclosure in equity was again recognized in *Judson Mills v. Norris*, 166 S. C., 422, 164 S. E., 919. In that case, as here, the question was whether the action was one at law or a suit in equity for the foreclosure of a lien by way of pledge of certain stocks. The Circuit Court, affirmed by this Court in an opinion by Mr. Chief Justice Blease, held:

"It is well established by the authorities that suit may be instituted in equity for the foreclosure of mortgages on personal property and of liens by way of pledge upon stocks and bonds, and that this is especially true where the debt, and/or the lien, is in dispute. In such a suit all questions arising under the plaintiff's claim can be determined making an end to litigation. (Citing cases).

"Nor is the nature of the action changed by reason of the fact that the defendants have, in their answers, set up defenses and counterclaims based upon alleged misrepresentations in the transaction upon which the plaintiff's note and pledge are predicated. The questions raised by these defenses

and counterclaims directly affect the validity of the plaintiff's lien and the question as to the amount due upon the debt secured by the lien. Where, in actions of foreclosure, the defendant sets up a defense and/or a counterclaim affecting the consideration, and arising out of the transaction in which the mortgage or lien was created, the authorities hold that the issues thus raised are equitable and are to be tried by the Court upon its equity side. (Citing cases). * * *

"It is therefore ordered that this case be referred to the master with instructions to take the testimony and report the same to this court."

These holdings are in accord with the general law elsewhere:

"A mortgage may ordinarily be foreclosed by a judicial proceeding for that purpose, as will be hereinafter discussed in § 398. Equity is not deprived of its jurisdiction over such a proceeding by the fact that the parties have stipulated for a foreclosure by some other method, such as a sale without judicial proceedings in a manner authorized by statute. * * * Where a foreclosure is sought in a judicial proceeding, the court will not direct a delivery of the property to the mortgagee, but will direct a sale thereof, a discharge of the debt out of the proceeds, and the payment of any surplus to the mortgagor. * * *

"Where different modes of foreclosure exist, the mortgagee may ordinarily elect which one he will pursue, as, for example, whether he will sell without judicial proceedings or will resort to a judicial foreclosure, at least if the former method is inadequate, or less adequate." 14 C. J. S., Chattel Mortgages, § 362, pages 1012, 1013.

"Proceedings to foreclose a mortgage are properly cognizable in equity, a question belonging thereto being presented, as where there are successive encumbrances; and the court may transfer such cause from the law to the equity side of the docket of its own motion. The fact that a remedy at law exists, unless such remedy is adequate, will not debar equit-

able relief of this nature, but, where the legal remedy of foreclosure is adequate, a mortgage cannot be foreclosed in equity. A defendant cannot, by demanding legal damages, divest the court of equitable jurisdiction to foreclose." 14 C. J. S., Chattel Mortgages, § 398, page 1049.

Without doubt therefore the holder of a chattel mortgage, or a vendor under a conditional sale contract who retains title as security for the unpaid purchase-money, may, after the debt secured has become past due and demand for possession of the property has been refused, institute an action in equity for the foreclosure of the mortgage. The question in the present case is whether the plaintiff under the allegations of this complaint has done so.

In most cases, the statement in the complaint of the facts which give rise to the cause of action is sufficient from the facts themselves to disclose to the Court whether the resulting cause of action is legal or equitable in its nature. However, it may happen, as in the case before us, that the same ultimate facts, properly pleaded, may have a double aspect because affording to plaintiff the right to either a legal or an equitable remedy, and so, as in this case, give rise either to an action at law to recover possession of personal property (with or without the benefit of immediate possession under the Code provisions relating to claim and delivery) or to an action in equity to foreclose a chattel mortgage. The right to choose which of the two remedies he would invoke in the first instance rested with the plaintiff. The third remedy of seizure and sale without suit has plainly been rejected by the plaintiff from the very fact that he has brought this suit;—also because, as alleged in paragraph 7 of the complaint, plaintiff made demand upon defendant for possession and the same was refused. It was therefore proper that plaintiff proceed no further without first invoking the aid of the Court. *Soulios v. Mills Novelty Co., supra.* From a reading of the complaint it would seem not open to doubt that the plaintiff intended to pursue the

equitable remedy of foreclosure, but the question still remains whether in the complaint he has in fact done so.

In *Citizens' National Bank v. Hawkins,* 140 S. C., 43, 138 S. E., 541, 542, this Court in an opinion by Mr. Justice Stabler stated the rule for the construction of doubtful or ambiguous pleadings as follows:

"Under the common-law rule, in case of doubt as to meaning, that construction was given to the pleading which was most unfavorable to the pleader, but by statute a more liberal rule has been adopted, with a view to substantial justice between the parties. Section 420, Vol. 1, Code 1922.

"In order to determine whether the action brought is *ex delicto* or *ex contractu,* pleadings should be liberally construed in favor of the pleader, so that substantive rights may not be defeated by technical rules (*Lorick v. Banks,* 76 S. C., [500], 502, 57 S. E., 527); and if it is doubtful whether the action is on contract or in tort, the doubt should be resolved in favor of the former (*Randolph & Co. v. Walker,* 78 S. C., 157, 59 S. E., 856); also, allegations of negligence will not convert a breach of contract into a tort (*Farmers' Union Company v. Anderson,* 108 S. C. [66], 70, 93 S. E. 422)."

"Where it is doubtful upon what theory the pleading was drawn, the Court will construe it according to theory it deems most in accord with the facts alleged. The pleading should be construed so as to prevent parties from being misled. Thus it has been said that the Court should consider what the opposite party had reason to understand was the issue tendered. The theory of the pleading is not determined from the legal verbiage or the name or style given to the pleading, or the epithets found therein, or from the statements or concessions of counsel which form no part of the record. Allegations not in harmony with the theory of the pleading will be considered surplusage. The Court will, when possible, sustain the theory intended by the pleader. But that a certain theory was evidently contemplated by the person

who drew the pleading is of no avail as against the theory shown by the facts alleged." 49 C. J., p. 118, § 110.

Appellant's brief points out that the first four paragraphs of the complaint are appropriate to either an action for recovery of personal property or an action for the foreclosure of a chattel mortgage, and argues that Paragraph 6 is neutral, that Paragraphs 5 and 7 are inconsistent with an action to foreclose, and that the prayer for relief (which discloses the plaintiff's intention to resort to a foreclosure in equity) may not be considered.

Paragraph 5 of the complaint quotes the terms of the contract conferring the power to seize the chattels and sell on default. Paragraph 7 alleges the breach of the conditions and default, the amount due, demand for payment and refusal, and demand for possession of the property and refusal. We find nothing in these paragraphs inconsistent with a statement of the facts which give rise to the case of action or repugnant to the statement of a cause of action for equitable foreclosure. The disclosure in Paragraph 5 of the plaintiff's right to seize and sell without resort to any legal or equitable Court proceeding to realize upon his security, is no more than a statement of an underlying right in the contract, which, in the absence of any allegation that he in fact resorted to that remedy, is not inconsistent with a resort to the equitable remedy. Even if unnecessary, it would be disregarded as surplusage. The remedy of seizure without resort to the Court first to determine the right to enter and seize is often doubtful or uncertain, involving in some cases a considerable degree of risk to a chattel mortgagee who pursues it. See *Robertson v. Cooper et al.*, 173 S. C., 305, 175 S. E., 524.

The allegation in Paragraph 7 of demand for possession and refusal, in connection with the other allegations of default, for similar reasons does not stamp the action as necessarily one in claim and delivery. It is equally consistent with the view that it was but the state-

ment of a further act of default in failing to comply with the provision of the contract, set forth in Paragraph 5 of the complaint, wherein defendant upon default, agreed to return said chattel on demand. In our view Paragraphs 5 and 7 are inconclusive to fix the character of the complaint as one in claim and delivery.

Another ground urged by appellant is that the complaint was verified and therefore took the place of the affidavit required by the statutory proceeding in claim and delivery. This view we do not consider tenable for the following reasons. The complaint is not co-extensive with the statutory requisites of such an affidavit. Code 1942, § 553. Of the five requirements of the statute, the complaint does not meet the last three. There is no allegation of the cause of the detention, the actual value of the property or that the same has not been taken for a tax, assessment, etc. The pleader therefore did not intend the complaint as an affidavit to obtain immediate delivery through a seizure by the sheriff. Nor does it appear that the complaint was used for that purpose. The record does not show that plaintiff claimed the immediate delivery of the property under claim and delivery proceedings, that he made the required affidavit, that he endorsed any requisition to the sheriff to take the property from the defendant and deliver it to the plaintiff, or that he filed the required undertaking with sufficient sureties. There is therefore nothing to indicate that plaintiff resorted in any form to the provisional remedy known as claim and delivery.

There may be, it is true, an action to recover possession of personal property without resorting to the provisional remedy of claim and delivery. A plaintiff may not claim immediate delivery but may elect to await final judgment in the action to obtain possession. *Adeimy v. Dleykan,* 116 S. C., 159, 107 S. E., 35. But at the end of such an action when he shall have obtained possession, he would still be where he started as regards selling the property and accountability for the application of the proceeds of

sale. Such an action would not be a full, adequate and complete remedy, nor a substitute for a foreclosure in equity where all questions can be determined in the one action and further litigation, together with the risks involved in proceeding independently without Court protection to sell and accountability for the proceeds after obtaining possession, be avoided. The Court would not be warranted in assuming without clear indication compelling such an inference that the plaintiff here intended to set forth or did in fact set forth in his complaint a cause of action to recover possession of the property, which, without more, would be but one step towards foreclosure or realizing upon the security without further accountability for its subsequent disposition.

While claim and delivery proceedings have been widened by statute they still fall far short of affording a chattel mortgagee the full protection obtainable by an action in equity to foreclose. In claim and delivery the right to possession, the value of the property, the amount due, any counterclaims arising out of the same transaction or any defenses legal or equitable are determined and damages actual or punitive may be recovered. Code 1942 §§ 602, 552-564-1. But no procedure is provided for a sale with the protection afforded by Court order, and the matter of accountability for the proceeds of sale is not concluded. On the other hand, a proceeding in equity to foreclose protects the rights of all parties, both plaintiff and defendant, and makes a complete disposition and accounting of the entire controversy with nothing left open for further litigation. Neither claim and delivery nor action to recover possession without claiming delivery, affords such a full, adequate and complete remedy at law as will defeat the right to resort to a Court of equity in this class of case.

Apart from the prayer for relief, and construing the complaint, as we must, under the rule of liberality in favor of the pleader, under all of the circumstances of the case, including the fact that no step was taken to invoke the claim

and delivery procedure and that demand for possession was made and refused, the complaint in our opinion does not require that the cause of action therein set forth be construed as an action to recover possession of personal property.

If we consider also the prayer for relief, the same result must follow. The prayer is (1) for the amount due with interest, attorneys fees and costs and (2) that the contract be foreclosed, the equity of redemption barred, the mortgaged chattel property be sold and the proceeds applied to the debt with interest, attorneys fees and costs. The guide for the determination of this question appears to be the rule stated in *Bell v. Mackey*, 191 S. C., 105, 3 S. E. (2d), 816, 822: "The characterization or classification of the action by the plaintiff as a legal one is not the test: 'Many actions are readily classified as legal or equitable, to which there is no general rule that can be applied in all cases. Generally, however, it may be said that the essential character of the cause of action, and the remedy or relief it seeks, as shown by the allegations of the complaint, determine whether a particular action is at law or in equity, *unaffected by the conclusions of the pleader or by what the pleader calls it, or the prayer for relief,* or the nature of the defense interposed, or new matter stated in the reply, or whether the action is statutory or otherwise. *Notwithstanding this, however, it is said that the nature of the issues as raised by the pleadings or the pleadings and proof, and character of relief sought under them, determines the character of an action as legal or equitable.* 1 C. J. S., Actions, § 54b, also see *Alford v. Martin,* 176 S. C., 207, 180 S. E., 13.' *Tuten v. Almeda Farms et al.,* 184 S. C., 195, 200, 192 S. E., 153, 155." (Emphasis added.)

Defendant relies upon the first portion above italicized; plaintiff upon the second. Either portion, considered alone without the other, leads to an opposite result. The true rule can only be one which will harmonize and give effect to both statements. If the character of

the action appears with sufficient clearness in the body of the complaint, it must control, unaffected by the prayer for relief or the intention or characterization of the pleader. So it is that if a complaint clearly states facts constituting only a legal cause of action and adds a prayer for equitable relief only, or conversely, an equitable cause of action coupled with a prayer for legal relief only, the prayer must yield to the true character of the action as determined by the facts stated in the complaint. It is also true that the prayer for relief cannot supply facts not stated in the body of the complaint. The prayer is no part of the cause of action. It cannot add anything to or take anything away from the facts pleaded. The prayer is no part of the charging or pleading portion of the complaint, which is the controlling factor in determining what are the ultimate facts alleged.

On the other hand, and although the absence of a prayer for relief does not render a complaint demurrable (*Balle v. Moseley*, 13 S. C., 439), Code Section 456 requires that a complaint contain (1) the title of the cause, (2) a plain and concise statement of the facts constituting a cause of action, and (3) a demand of the relief to which the plaintiff supposes himself entitled. In a case where it is material or necessary to determine which of two different remedies arising upon the same state of facts a party has elected to pursue, undoubtedly, the prayer for relief may be considered at least as tending to indicate which remedy the plaintiff elected. In order to determine "the character of relief sought," it would seem clear under the rule above stated in *Bell v. Mackey, supra,* that the prayer for relief may be considered, not as changing the facts alleged or the issues raised by the pleading, but to ascertain the character of the relief demanded by the plaintiff. Without looking to the prayer, in some cases there may be no way to ascertain the character of relief sought. To the limited extent above indicated, we think the prayer may properly be considered as a circumstance going to show which of the two remedies the plaintiff in-

tended to invoke, and for such light as it may shed upon the interpretation of the language used by the pleader in the complaint where not inconsistent with such language.

"The prayer for relief cannot be considered as adding to the allegations of the declaration; complaint, or petition. nor can it enlarge the cause of action stated, but, while not controlling, the prayer may be looked to aid in the interpretation of the language used in attempting to state a cause of action, and in determining the relief which is actually sought; and it cannot be disregarded when plaintiff makes a contention as to the character of the action presented by his own complaint. Conversely, the body of the petition may be for the purpose of determining the relief sought." 49 C. J., p. 175, § 188 and cases cited in notes 57 & 58. Also see 49 C. J., p. 117, § 108; notes 76 & 77, and p. 169, § 184.

There is nothing in the record in this cause to indicate that defendant has been misled concerning the theory that plaintiff intended to invoke. If in doubt, a motion to require an election would remove any possible question.

Once it has been determined that the complaint states a cause of action which is equitable as distinguished from one cognizable only at law, it necessarily follows that a compulsory order of reference was not improper. *Judson Mills v. Norris, supra.* This Court has also held in other classes of cases cognizable on the equity side of the Court that the Judge may either hear the case himself or pass a compulsory order of reference. For instance: an equity suit for the appointment of a receiver, *Peeples v. S. C. Agric. Loan Ass'n,* 156 S. C., 429, 153 S. E., 283; an action for cancellation of a deed for alleged fraud, *Mills v. Little,* 158 S. C., 17, 155 S. E., 148; an action for specific performance, *Spencer v. National Union Bank,* 192 S. C., 355, 6 S. E. (2d), 755; *Aiken Mortgage Co. v. Jones,* 197 S. C., 245, 15 S. E. (2d), 119; an action for injunction, *Momeier v. John McAlister, Inc.,* 190 S. C., 529, 3 S. E. (2d), 606, an action for cancellation or rescission of a written instrument,

*Mortgage Loan Co., v. Townsend,* 156 S. C., 203, 228, 152 S. E., 878; and in actions for an accounting, *Farley v. Matthews,* 168 S. C., 294, 167 S. E., 502.

This Court, of course, expresses no opinion upon the merits of any position taken in either the complaint or the answer in this cause. To the extent that any facts are discussed or assumed in this opinion it is solely a consideration of the complaint for the purpose of determining the question at issue.

The exceptions must be overruled and the order of the Court below affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE, and STUKES concur.