BRUNSWICK CORPORATION, Plaintiff,
and Floyd Corporation, d/b/a Pleas-
ant Lanes, Defendant,

v.

J. C. LONG, Alberta S. Long, and the
Beach Co., a corporation, Appellants.

No. 11376.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 10, 1967.

Decided Feb. 2, 1968.

Certiorari Denied June 3, 1968.

See 88 S.Ct. 2036.

Charles S. Way, Jr., and Edward D. Buckley, Charleston, S. C. (Bailey & Buckley, Charleston, S. C., on brief), for appellants.

Augustine T. Smythe, Charleston, S. C. (Buist, Buist, Smythe & Smythe, Charleston, S. C., and Robert T. Mc-Naney, Chicago, Ill., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and WOODROW W. JONES, District Judge.

WINTER, Circuit Judge:

The primary issue which we are called upon to decide in this case is the extent, under South Carolina law as applied to the particular lease agreement in question, of the priority of a landlord's claim to rent over the claim of a chattel mortgagee to mortgaged property placed upon the leased premises. The district court ruled, against the contention of the landlord that it was entitled to recover the total amount of rent due throughout the term of the lease, that the landlord's claim had priority only to the extent that it was for rent unpaid during the period which tenant had actually occupied the premises.[1] We affirm.

There is substantial agreement between the parties as to the facts.[2] Brunswick Corporation ("Brunswick") originally sold ten bowling lanes and pinsetters to one Raymond W. Floyd and his partner Swindal, taking a chattel mortgage on the property to secure the unpaid balance of the purchase price. When a default under this mortgage occurred Brunswick repossessed the lanes and pinsetters. Subsequently, Brunswick agreed to sell this equipment to Floyd for the balance due on the original mortgage. Floyd then organized the Floyd Corporation and entered into a ten-year lease, later assigned to The Beach Co. ("Beach"), which provided that the landlord would construct a building suitable

---

1. If the landlord's contention were accepted, it would be entitled to $130,256.-40; the district court awarded the landlord only $1,486.41.

2. The parties disagree on whether Floyd Corporation represented to the landlord that the bowling equipment which was to be installed on the premises was free and clear of liens. However, we do not believe that resolution of this dispute is essential to the disposition of the case.

for the installation of bowling alleys. The lease further provided that:

"Floyd agrees to pay Beach Co. for the original ten year term of this lease, a guaranteed minimum rental of $128,557.20 *payable in advance* in One Hundred and Twenty (120) equal monthly installments of $1,071.31 on or before the 10th day of each month and every month during the ten year term hereof and the additional five year term if exercised by the tenant and at the same rate." (emphasis added)

The lease was executed on February 22, 1962, and, in "short form," recorded on March 3, 1962.[3]

■ In March, 1962, Brunswick executed a sales order with Floyd Corporation for certain miscellaneous equipment, and agreed to install the lanes and pinsetters in the building to be constructed by the landlord. After Beach had constructed the building in accordance with the terms of the lease, the bowling equipment was installed, and Floyd Corporation opened for business on September 15, 1962. It was not until October 24, 1962 that a conditional sales contract between Brunswick and Floyd Corporation was executed on the lanes and pinsetters. Although the conditional sales contract on the miscellaneous equipment was executed on August 17, 1962, Brunswick offered no proof before the district court to show that this document was executed before the equipment had been installed. Brunswick's conditional contracts of sale were recorded on August 20, 1962 and January 21, 1963, respectively.[4]

The bowling operation never seems to have been financially successful, and Floyd Corporation was unable to pay any substantial amount under the conditional sales contracts to Brunswick. On the other hand, it was able to make rental payments with some degree of regularity, and Beach took no legal action to enforce payment of the rent until January 22, 1965. On that date Beach distrained certain property of Floyd Corporation situate upon the leased premises—other than that subject to Brunswick's chattel mortgages—for the purpose of collecting rent payments of $2,086.41, then in arrears. This amount was reduced shortly thereafter by Floyd Corporation's partial payment of $600.00.

On February 3, 1965 Brunswick brought the present action against Floyd Corporation seeking a recovery of the mortgaged property—both that subject to the August 17, 1962 conditional sales contract and that subject to the October 24, 1962 conditional sales contract—and a money judgment for the amount due on its various accounts. Upon posting the statutory bond, Brunswick had the United States Marshal seize the mortgaged chattels. Beach intervened, claiming that it had a prior right to apply the mortgaged property against not only the amount of rent actually in arrears, but the entire sum due for the balance of the ten-year term. Beach also counterclaimed for actual and punitive damages totalling $50,000.00, alleging that Brunswick had intentionally and wrongfully invaded its priority rights by seizing the chattels.

Floyd Corporation did not appear in the proceedings, and the district court gave Brunswick judgment against it for the balances due under the conditional contracts of sale. The district court dismissed Beach's counterclaim; and as to

3. Brunswick has argued on appeal that the short form of the lease, being the *only recorded document,* did not give subsequent creditors notice of the terms of the full lease. This contention seems inconsistent with the statement of Brunswick's counsel before the district judge that "It is all one lease, except the short lease is just evidence of the long lease. That is what it amounts to." However, we do not need to reach the question whether Brunswick was given notice of the long lease by the recordation of the short lease, but may assume so arguendo.

4. Under South Carolina law, a "conditional sales contract" is in legal effect a "chattel mortgage." Speizman v. Guill, 202 S.C. 498, 25 S.E.2d 731 (1943). In this opinion the terms are used interchangeably.

the question of priority, found that although Beach had priority rights under the Statute of Anne, S.C.Code § 41–205, for the rent payments actually in arrears which had accumulated during the preceding year, it had no priority as to the rent for the balance of the ten-year term. From these rulings Beach appealed. In this Court it makes the further contention that Brunswick forfeited its right to possession of the mortgaged property by taking a money judgment against Floyd Corporation.

## I

 Beach relies strongly upon Legget & Co. v. Orangeburg Piggly Wiggly Co., 176 S.C. 449, 180 S.E. 483 (1935), in support of its contention that it is entitled to recover the total amount of rent contracted for in the lease. Unlike the landlord in *Piggly Wiggly,* Beach did not distrain upon the property which it seeks to make subject to its claim. However, under South Carolina law a court will preserve the priority of the landlord's claim when the property is in custodia legis, Ex parte Stackley, 161 S.C. 278, 159 S.E. 622 (1931); and although the priority protected in the *Stackley* case was only to the extent of one year's rent in accordance with the Statute of Anne, we believe that a court should exercise its power to protect the landlord's priority to whatever extent it may have been asserted under the process of distraint. Otherwise, a chattel mortgagee, who concededly had lost his priority over the landlord by his failure to record his mortgage, could regain this priority by the simple expedient of bringing a claim and delivery action before the landlord has distrained.

Thus, appellant's rights are to be measured by its right of distraint, as defined by South Carolina law, and we turn to a consideration of Leggett & Co. v. Orangeburg Piggly Wiggly Co., supra. In that case, after a lease—which provided that all the rent for the entire five-year term was due from the date of the lease—had been entered into and recorded, the premises were renovated and mortgaged property was placed thereon. The relevant mortgages were not recorded until approximately one month later. Almost two years thereafter, receivership ensued, at a time when there remained a substantial amount unpaid on the mortgage debt as well as on the rent, which the tenant had not paid during the latter part of the preceding year. On these facts the Supreme Court of South Carolina held that by virtue of the clause of the lease providing that all the rent was due at the beginning of the term, the landlord was a creditor of the tenant for that amount by the time the mortgages were recorded and the landlord had the right to distrain for such sum.

 One aspect of *Piggly Wiggly* which is different from the case at bar appears on its face to make that case all the stonger authority for Beach, the landlord herein: In *Piggly Wiggly* the chattel mortgages were at least executed, though not recorded, before the chattels were placed upon the leased premises. In some situations this distinction might well be of significance, as is indicated by the recent case of Frady v. Smith, 247 S.C. 353, 147 S.E.2d 412 (1966), in which it was held that the landlord's actual notice of a chattel mortgage which had been executed after the mortgaged property was placed upon the leased premises could not deprive the landlord of his right to distrain for unpaid rent which at least partially accrued after he had acquired notice of the mortgage.[5] How-

5. Compare Mather-James Co. v. Wilson, 172 S.C. 387, 174 S.E. 265 (1934), in which the court said that where a chattel mortgage, although executed before the mortgaged chattels are placed upon the leased premises, is not recorded until after, the chattel mortgagee's claim is prior to the landlord's to the extent that a default in the rent payments did not occur until after recording of the mortgage. Similarly, in Haverty Furniture Co. v. Worthy, 241 S.C. 369, 128 S.E.2d 707 (1962), it was held that a landlord's actual knowledge of a chattel mortgage which was not recorded until after the landlord had distrained the

ever, Brunswick, unlike the mortgagee in *Frady*, is not arguing that it possesses statutory priority which abrogates the landlord's right to distrain; rather, conceding Beach's priority, Brunswick contends that the landlord's right to distrain is limited to the rent which had already been earned by the tenant's actual occupation of the premises.[6] Thus, we regard the fact that Brunswick's mortgages were not executed until after the chattels were installed in the building constructed by Beach as not defeating Brunswick's rights after Beach's right to accrued and unpaid rent was satisfied.

In allowing Beach to recover only for the amount of rent which had actually been earned, the district court distinguished *Piggly Wiggly* on the ground that the lease involved here did not in fact provide that the total amount of the rent should be due at the beginning of the term. He reasoned that the term providing that the rent shall be "payable in advance in One Hundred and Twenty (120) equal monthly installments * * on or before the 10th day of each month" meant only that each monthly payment is payable in advance for each month. He cited several other clauses in the lease, such as that providing that Floyd Corporation "shall not be obligated for any payment of rental until such time as the sum of $3,000.00 [a credit given by the landlord for certain equipment supplied by Floyd Corporation] shall have been consumed" and another providing that the same credit shall "be made by granting to Floyd a credit on the first rents

coming due under the terms of this lease," to show that the parties had intended that the rent was to become due monthly. Moreover, he pointed out that Beach itself had acted consistently with this interpretation of the lease when on January 22, 1965 it distrained certain property of Floyd Corporation and claimed only those *monthly* rentals which were then in default.

■ We find the reasoning of the district judge convincing and his conclusion sound. We agree that *Piggly Wiggly* does not control. Indeed, our examination of the case law of South Carolina suggests strongly that either *Piggly Wiggly* has been overruled *sub silentio,* or that the Supreme Court of South Carolina would not apply its holding to the case at bar.

Five years after *Piggly Wiggly* was decided, the State Supreme Court was presented with the question which it phrased as whether "an acceleration clause [in a lease] * * * authorize[s] a landlord to distrain for rent which * * * [has] not been earned or accrued." Gentry v. Recreation, Inc., 192 S.C. 429, 7 S.E.2d 63, 128 A.L.R. 743 (1940). Without mentioning *Piggly Wiggly,* the court answered this question in the negative. It recited as factors influencing its decision: (1) the hesitancy of courts in many jurisdictions to hold such acceleration clauses valid for any purpose whatsoever since they are in the nature of a penalty; (2) the fact that such acceleration clauses were alien to the common law, from which the remedy

mortgaged chattel, but which was executed before the chattel was placed upon the leased premises, prevented the landlord from having priority over the chattel mortgagee in his claim for rent. Thus, it seems that although a chattel mortgagee who obtains a mortgage before the chattels are placed upon the leased premises, but does not record it until after, does not come within the protection of § 41–155 of the South Carolina Code, he does have any additional priority rights over the landlord which the general lien statutes grant to him. On the other hand, under the *Frady* case, it appears that where the

chattel mortgage is not only not recorded, but also not executed until after the mortgaged property has been placed upon the leased premises, the landlord's right to distrain has priority over the claim of the chattel mortgagee regardless of whether the landlord has notice, constructive or actual, of the mortgage at the time the rent goes into arrears.

6. In other words, as we understand Brunswick's position, it admits that the landlord would have a right to distrain for all rent which was due, whether it accrued before or after Brunswick's recording of its mortgages.

of distraint emerged; (3) language from *Fidelity Trust & Mortgage Co. v. Davis,* 158 S.C. 400, 155 S.E. 622 (1930), which, significantly, before being revived in *Gentry* had been overruled by a line of cases culminating in *Piggly Wiggly,* that distraint is appropriate only "when the rent is in arrears;" and (4) then § 8822 of the South Carolina Code, which provided that if a tenant vacated the premises before his term had expired, the rent for the balance of the month in which the tenant left became immediately due and the landlord could distrain therefore.[7]

■ Without equivocation, the South Carolina Supreme Court concluded in *Gentry* that "we are definitely of the opinion that the lessors were not entitled to the remedy of distress for such unearned future rent." 7 S.E.2d at 66. In light of this flat statement and the fact that the reasons given by the court for its decision are equally applicable to the lease provision purporting to make the total rent due at the beginning of the term as to one purporting to accelerate future rent in the event of default, we feel that if the South Carolina Supreme

Court were now presented with the instant case, it would not distinguish *Gentry* on the ground that *Gentry* concerned an acceleration clause and would hold that the landlord is entitled only to recover that rent which had been earned by the tenant's actual occupation of the premises.[8] We are aware that § 8822 of the 1932 South Carolina Code, upon which the court partially relied in *Gentry,* was repealed in 1946. However, the significance of the repeal is elusive. The repeal could mean either that parties are now free to include acceleration clauses, or their equivalent, in leases in order to broaden the landlord's right of distraint, or that a landlord has now been stripped of even the limited acceleration right which had previously been given him by statute and can distrain only for that amount which was actually due at the time the tenant vacated the premises. Because of the demonstrated tendency of the Supreme Court of South Carolina to interpret relevant legislative action as limiting the landlord's distraint rights, see footnote 7, supra, it is probable that that Court would adopt the latter interpretation of the repeal.[9]

7. The statutory section cited by the court was not necessarily support for the view that the legislature intended to restrict the landlord's right of distraint to recovery for only one month's rent in the event that the tenant vacated the premises. The court could have reasoned with equal logic that § 8822 did not prohibit the parties to a lease from providing for acceleration of rent for a greater term than one month, but only prescribed that in the absence of such agreement, acceleration of one month's rent would be effected as a matter of law.

8. Appellee has also drawn our attention to the fact that the South Carolina Supreme Court has never once cited the Piggly Wiggly case in the more than thirty years since it was decided.

9. We also recognize that in *Gentry* since the lease in question was not recorded, the Court's statements concerning the inability of the acceleration clause to broaden the landlord's right of distraint was at most an alternative ground for the decision. Thus the Court said: "We are, therefore, of opinion from the record in this case that the respondent stands in

the impregnable position of a wholly innocent third party, and hence would not be bound by the acceleration clause in the lease, even if it could be construed as conferring the right of distress." 7 S. E.2d at 67.

That the portion of the *Gentry* decision upon which we rely is only an alternative holding, or even only dictum, does not persuade us that we should ignore it, however. Our function in applying state law under Erie R.R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is to attempt to decide the case before us in the same manner as would the state courts. Clearly, we would not be exercising this function if our approach was to restrict all of the state precedents to their own facts and to make nice distinctions between holdings and dicta, while failing to take into account all relevant indications of the state of the law of the state. Indeed, the fact that a state court has reached a question which it was not necessary for it to reach may be the surest guide as to how it would decide future cases raising similar issues.

## II

Affirmance of the district court's dismissal of Beach's counterclaim necessarily follows from our resolution of the principal issue in the case. For it is clear that Beach is not entitled to recover damages resulting from an intentional trespass upon priority rights, if in fact it possessed no such rights. The cases cited by appellant are distinguishable on this ground. See, e. g., Webber v. Farmers Chevrolet Co., 186 S.C. 111, 195 S.E. 139 (1938); Bingham v. Harby, 91 S.C. 121, 74 S.E. 369 (1912).

Beach is, of course, entitled to recover all of the unpaid rent which had accrued up to the time of the seizure of the chattels under the Statute of Anne, S.C. Code § 41–205, since the period for which the rent was due did not exceed one year. But Brunswick has not interfered with this priority in any manner and has not even contested Beach's right to recover this amount.

## III

We also find no merit in Beach's contention that Brunswick forfeited its right to possession of the chattels on which it held mortgages by taking a money judgment against Floyd Corporation. It is true that the South Carolina claim and delivery action affords a restricted remedy to a successful plaintiff, i. e., he is entitled only to a judgment for possession of the chattel which he sought to recover, or, if return of the property is impossible, to a money judgment for its value. S.C.Code § 10–2516; Wilkins v. Willimon, 128 S.C. 509, 122 S.E. 503 (1924). But the action brought by Brunswick was not merely for claim and delivery. In its complaint Brunswick requested possession of the chattels *and* a money judgment against Floyd Corporation, both remedies being available to it as a mortgagee. Speizman v. Guill, 202 S.C. 498, 25 S.E.2d 731 (1943). It would be unreasonable to hold that by obtaining a money judgment against his debtor, a creditor cannot reach the principal asset available to enforce that judgment especially when a lien on this asset was bargained for as security for the extension of credit.

Beach seeks to distinguish the *Speizman* case on the ground that the plaintiff there foreclosed the mortgage without following the claim and delivery procedure and, therefore, was not able to gain possession of the mortgaged chattel before obtaining his judgment. We find this distinction unconvincing. In Stokes v. Liverpool & London & Globe Ins. Co., 130 S.C. 521, 126 S.E. 649 (1925), relied on by the Court in *Speizman*, it was pointed out that claim and delivery is one of several methods by which foreclosure can be accomplished, and no suggestion was made in that case that by choosing to follow this procedure a mortgagee is precluded from obtaining both a judgment on his mortgage debt and possession of the mortgaged chattel to satisfy that debt. Nor do we perceive any reason to achieve such a result. Protection against the abuse to which the immediate possession provision of the claim and delivery action is subject is provided by the requirement that the party invoking the procedure post bond or subject himself to the risk of punitive damages. S.C.Code § 10–2516. There is no necessity for the additional safeguard of forcing a mortgagee, who desires to avail himself of the claim and delivery action in order to foreclose a mortgage, to sacrifice remedies otherwise available to him. Accordingly, the district court committed no error in granting Brunswick the right to remove the chattels in accordance with its conditional sales contracts.

*Affirmed.*