6652
### V. P. RANDOLPH & CO. v. WALKER.

1. PLEADINGS—CONTRACT—TRUST.—A COMPLAINT alleging a sum of money was deposited with defendant in trust for plaintiff subject to his order, defendants refused to pay, his tortious conversion to his own use, states a cause of action in contract.

2. LIMITATION OF ACTIONS—TRUST—FUTURES—GAMBLING.—An action to recover money paid to another *to be* used in paying margins on contracts for future delivery of grain, etc., is barred in six years.

3. COUNTER CLAIM—TRUST.—One receiving money on deposit for another under contract to pay it out on his order, cannot set up as a counter claim against the obligation to pay a debt due him before he accepted the fund in trust.

Before DANTZLER, J., Fairfield, February, 1907. Affirmed.

Action by V. P. Randolph & Co., Inc., against D. V. Walker. From judgment for plaintiff, defendant appeals.

*Messrs. A. S. & W. D. Douglass,* for appellant. *Mr. W. D. Douglass* cites: *Whether action is in contract or tort cannot be determined by inspection of pleadings:* Pom. R. & R., secs. 573, 799. *Claim is not barred:* 53 S. C., 175; 44 N. Y., 63; 42 N. Y., 83. *Action is in contract and counter claim should have been allowed:* 36 Kan., 51; 152 U. S., 616. *There being no proof that plaintiff was entitled to the possession of any particular money, nonsuit should have been granted:* 44 N. Y., 445; 16 N. Y., 251; 26 Ency., 766; 39 L. R. A., 845; 6 Rich. L., 171; 10 Rich. Eq., 557; 1 McM., 431; Pom., sec. 558.

*Messrs. Nelson & Nelson* and *Buchanan and Hanahan,* contra, cite: *It was proper to direct the verdict under proof:* 4 Am. & Eng. Cas., Ann., 980, and note; 7 Current L., 1150; 75 S. C., 201. *Section 2312, Code 1902, is repealed by:* Acts 1907, 612; Bish. Written L., sec. 177; End. Int. of Stat., 479, 480. *The action is in tort and no counterclaim is admissible:* 36 N. Y., 191; 48 S. C., 422; 1 Esp.,

378; 25 N. P., 135, 139-6; 1 Tidd. Pr., 4, 5; Steph. on Pl., 48; 1 Burr., 452; 2 Hill, 323; Bacon. Abrid. Title Trover D.; 3 Hill, 253; 7 Current L., 848; 11 S. C., 329; 1 Chitty on Pl., 151-2; 11 Johns., 479; 43 S. C., 460; 57 S. C., 498; 46 S. C., 230; 11 S. C., 328; 51 S. C., 498; 40 S. C., 538; 28 S. C., 86; 18 S. C., 312; 2 McC., 386; 1 McC., 206, 211; 2 Bail., 137; 40 S. C., 538; 28 S. C., 80; 45 S. C., 688; 53 S. C., 137. *If tort be alleged, counterclaim in tort cannot be set up:* 58 S. C., 244; 21 S. C., 289; 20 S. C., 259; 57 S. C., 498; 11 S. C., 328; 5 Rich., 237. *If action be in contract, defendant cannot set up as a counterclaim a gambling transaction prohibited by statute:* 21 S. C., 389; 25 S. C., 513; 84 N. Y., 272; 72 S. C., 463; 1 Brev., 495; 1 McC., 428; 1 Tidd's Pr., 663-4; 1 Chitty Pl., 599; 37 N. Y., 399; 22 N. Y., 491; 11 S. C., 337; 43 S. C., 63; 89 Am. D., 484; 25 Ency., 575; Pom. Code Rem., secs. 788, 775, 785; 90 N. Y., 293; 20 S. C., 258. *The Statute sec. 2312 of Code 1902 gives no right of defense or counterclaim:* 2 Sandf., 436; 8 Ency., 1022, note 1; Waterman Set-off, 27; 22 A. M. R., 432; End. Int. Stat., 468; 1 Bail., 315; 1 Speer, 383; 1 Hall, 335; 6 Com., 20; 56 N. H., 155; 3 Des. Eq., 125; 21 S. C., 41; 58 S. C., 244; 153 U. S., 318. *Statutory remedy must be pursued:* 153 U. S., 318; 58 S. C., 244; Cool. Torts, 653; 23 U. S., 367; 4 Johns R., 193; 6 Mass., 44; 56 N. H., 155; Sedg. Stat. and Con. L.. 30, 221, 243, 263; Bish. Writ. L., sec. 249; End. Int. of St., secs. 113, 471; Black Int. of L., 130, 148; 1 Strob. L., 82; 1 N. & McC., 22; 73 S. C., 36; 50 S. C., 537; 71 S. C., 33. *Counterclaim does not allege the claim was due when action commenced:* 20 S. C., 535; 3 Tenn. R., 186; 3 M. & W., 442; 1 Tidd's Pr., 663; 2 Pas. on Con., 737, 743, 742: 7 Wait's A. & D., 522, 480; 4 McC., 210; 3 McC., 249; Water on Set-off, sec. 66, 652; Mon. Set-off, 35; Wait's N. Y. Ann. Code, 268; 30 S. C., 126. *If defendant had no right to sue on his counterclaim he could not set it up:* 2 Pars. Con., 742, 743, 737; 25 Ency., 572; 45 Am. Dec., 133; 12 Am. D., 153; 30 Am. D., 681; 90 Am. D., 24; 30 S. C., 127;

7 Wait's A. & D., 522; 1 Chitty Pl., 599; 89 Am. D., 482; McC., 249; 57 S. C., 151. *Counterclaim cannot be set up against a trust relation:* 108 Penn. St., 273; 99 Id., 376; 9 Id., 475; 66 Id., 375; 1 Rawle, 330; 7 Wait's A. & D., 484. *Counterclaim is not a legal demand:* 7 Wait's A. & D., 475; 25 Ency., 512; 1 Bail., 315; Waterman Set-off, 27. *If defendant received money for unlawful purpose he cannot take advantage of it:* 45 S. C., 372; 3 Des. Eq., 132.

September 11, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The complaint alleges plaintiff's deposit with defendant of the sum of one thousand four hundred and ninety-eight dollars and three cents during the months of January, February and March, 1905, defendant's agreement to hold the money as plaintiff's agent subject all times to his order, the tortious conversion of one thousand seventy-six dollars and three cents by defendant to his own use and his refusal to return to plaintiff the money so converted.

The first defense is a general denial. As a second defense, the defendant alleges the receipt by him of several different sums of money from the plaintiff between May 23rd, 1905, and June 14th, 1905, disbursements by him at the direction of the plaintiff, leaving a balance in his hands on June 13th, 1905, of one thousand four hundred and twenty-one dollars and thirty-one cents, and notice to the plaintiff that on that day he had "retained and applied one thousand seventy-six and 3-100 dollars thereof to amount due defendant by plaintiff on account of certain transactions and contracts by plaintiff for him, in buying and selling for future delivery cotton, corn, wheat, stocks and shares of stock, and other commodities and produce, said contracts having been made during the months of January, February and March, 1905, said amount of one thousand and seventy-six and 3-100 dollars having been paid by plaintiff or its duly authorized agent as margins to cover any loss that

might be sustained by plaintiff in the buying and selling by plaintiff for defendant, and being without any intention on the part of either to make an actual delivery in kind, but being nothing more nor less than gambling on the future prices of said cotton, corn, wheat, stocks or shares of stocks and other commodities and produce." The defendant further alleges payment to the plaintiff of four hundred and twenty-one dollars and forty-nine cents, plaintiff's failure to respond to his notice of the appropriation of the remainder, one thousand and seventy-six dollars and three cents, now claimed, or to make any demand on him until September 2nd, 1905, and he alleges the plaintiff is estopped from claiming the fund, because relying upon plaintiff's acquiescence, he had used it as his own and for his own purposes. As the case turns upon a certain question of pleading involving the precise language of the counterclaim, it is necessary to set it out in full.

1. "That plaintiff being a corporation under the laws of the State of Pennsylvania, the defendant, at various times between 8th day of January, 1905, and the 14th day of March, 1905, delivered to and deposited sundry sums of money, aggregating one thousand and seventy-six and 3-100 dollars, with one R. J. McCarley, one J. R. Thompson, and one J. Boyd Stevens, who did business in the town of Winnsboro, in the County and State aforesaid, at the times of such deposits, as the Winnsboro Cotton Exchange, commonly called a bucket shop, and were the duly authorized agents of plaintiff.

2. "That said deposits or payments, aggregating one thousand and seventy-six and 3-100 dollars, were made for the purpose of contracts with the plaintiff to buy and sell cotton, wheat, corn, stocks or shares of stocks or other commodities and produce for future delivery, and the same was held by the plaintiff as margins to cover the loss that might be sustained in such buying and selling by plaintiff for defendant. That said contracts were made between plaintiff and defendant without any intention on the part of either

that said cotton, corn, wheat, stocks or shares of stocks or other commodities and produce should be actually delivered in kind, said contracts being in fact, acts of gambling on the future prices of cotton, corn, wheat, stocks or shares of stocks, and other commodities and produce.

3. "That plaintiff has refused to carry out its contracts as aforesaid with defendant and refuses to pay him the said sum of one thousand and seventy-six and 3-100 dollars, although plaintiff gave defendant notice that he released all profits that might arise on said contracts.

"Wherefore said defendant demands judgment against the plaintiff for said sum of one thousand and seventy-six and 3-100 dollars with interest thereon from the 13th day of June, 1905, and for costs."

The second defense of the answer was struck out as irrelevant and redundant because not set up within the limit of three months prescribed by section 2312 of the Civil Code for the recovery of losses on contracts in futures, where actual delivery is not contemplated. A demurrer to the counterclaim was sustained on the ground that the complaint states a cause of action for tort and not *ex contractu;* and as the cause of action alleged in the counterclaim did not arise out of the transaction set forth in the complaint as the foundation of plaintiff's claim, and was not connected with the subject of the action, it was held not available as a counterclaim. The case then went to trial, and the defendant, being sworn as a witness on the plaintiff's behalf, proved deposits by the plaintiff in the form of several drafts, payable to defendant's order, and of cash turned over to him by one Morris, aggregating in all, one thousand five hundred seventy-two dollars and fifty-one cents received; and testified to his disbursement of part of the fund as agent for the plaintiff. All evidence as to cotton speculation was excluded, and the Circuit Judge directed a verdict for the plaintiff for the amount claimed.

If the Circuit Judge was right in striking out the second defense, and sustaining the demurrer to the counterclaim,

11—78

it follows he was right in excluding the evidence as to the counterclaim and second defense, and in directing a verdict.

We consider first the demurrer to the counterclaim. The Code of Procedure, section 171, requires that a counterclaim must arise "out of one of the following causes of action: 1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's action or connected with the subject of the action. 2. In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action." The first subdivision may be left immediately out of view, for the cause of action set up as a counterclaim obviously does not arise out of anything alleged in the complaint, nor is it in anyway connected with the subject of the plaintiff's action.

As the second subdivision allows any other cause of action, arising on contract existing at the commencement of the action, to be set up as a counterclaim in an action arising on contract, the demurrer was properly sustained, unless the plaintiff stated a cause of action on contract.

The definitions of tort and contract are familiar, but there is no certain test by which the Court can be guided in determining whether a particular action is *ex delicto* or *ex contractu.* Under the old practice, the pleader could prevent any doubt by the use of certain formulæ, but the Code lays down no rule. It may be well to refer to some of our own cases on the subject, though in none of them was just such a complaint, as is here presented, passed on.

In *Abrahams* v. *Bank,* 1 S. C., 441, plaintiff left with defendant bank, as security for a loan of four thousand dollars in Confederate money, four thousand dollars of the bank's own bills, which it was agreed should be laid aside and returned to the plaintiff upon his repayment of the Confederate money. The bills were kept in a separate package and not placed to the credit of the plaintiff on his bank book, and he never intended to deposit them. Tender by the plaintiff of Confederate money and demand for the surren-

der of the bank notes were refused by the bank. The Court
decided the action was not for the recovery of a debt, but
for the conversion for specific choses in action. In *Welborn*
v. *Dixon,* 70 S. C., 108, 49 S. E., 232, there were allegations
in the statement of the second cause of action, which seemed
to indicate the plaintiff meant to charge violation of the trust
by the defendant in selling to another, a specific parcel of
land conveyed to the defendant as security for a debt, yet the
Court treated the entire complaint as an action for breach
of a contract to reconvey the land. In *Bryce* v. *Parker,* 11
S. C., 337, a counterclaim based on the allegation that the
defendant had paid plaintiff twenty-five dollars for an ox,
which the plaintiff had warranted as fit for the purpose
for which it was brought and that the warranty had been
broken, was held to state a cause of action on contract and
not for a tort. In *Lorick* v. *Bank,* 76 S. C., 500, the plaintiff
died during the pendency of an action against the bank for
damages for refusing to pay her check, when there was a
balance to her credit sufficient for the purpose. The Court
held, that while there were expressions in the complaint
which seemed to indicate an intention to rely on an alleged
tort founded on contract rather than on a breach of the
contract itself, it would be too technical not to have regard
to the actual facts alleged, which constituted a breach of
contract as well as a tort. Accordingly it was adjudged the
action survived as an action *ex contractu.* The averment
of a promise, or consideration, or other element or usual
incident of contract has been held significant in giving
character to the action as *ex contractu.* 21 Enc. P. & P.,
659. The generally accepted rule is that, in doubtful cases,
every intendment is in favor of regarding the action *ex con-
tractu. Ib.,* 650; Bliss on Code Pleading, sec. 153, note.

In this case the complaint alleges a deposit of money with
defendant, his agreement to hold it at all times as the agent
of the plaintiff subject to his order, and defendant's refusal
to pay over the money. It is true the complaint also alleges
that "while the defendant was holding the said sum of

money as agent and in trust for the plaintiff, unmindful of his duty in that regard the said D. V. Walker tortiously converted the money to his own use and unlawfully refused and still refuses to return the said money." But it is to be observed the allegation is that a certain amount of money was "deposited" with defendant to be held subject to the order of the plaintiff, not that a particular package or particular bills of money were left with defendant to be kept in trust. The implication from the language is not that the identical bills were to be held by the defendant, but that the amount deposited was to be at all times in his hands subject to the order of the plaintiff. This distinguishes the case from the case of *Abrahams* v. *Bank, supra,* and other like cases, where the allegation was made of the conversion of a particular article of property, as, for example, a particular package or piece of money. Where the trust funds were not to be kept in their original form as the identical property of the principal, the action against the agent for misappropriation can be maintained only as an action *ex contractu.* An allegation of the tortious conversion of money which retained its identity in the hands of the agent is necessary to an action *ex delicto.* *Larson* v. *Dawson* (R. I.), 96 Am. St. Rep., 716; *Cooke* v. *Bryant* (Ga.), 30 S. E., 435; *Shrimpton* v. *Culver* (Mich.), 67 N. W., 907; *Davis* v. *Thompson* (Penn.), 14 Atl., 169; *Bolling* v. *Kirby* (Ala.), 24 Am. State Rep., 818, note; *Royce* v. *Oakes* (R. I.), 39 L. R. A., 845; 28 Am. & Eng. Enc., 652.

Cases like *Baker* v. *Bank* (N. Y.), 53 Am. Rep., 150, and *Britton* v. *Ferrin* (N. Y.), 63 N. E., 954, are not opposed to this view. For in those cases it was held the money received by a factor as proceeds of sale of principal's property was the specific property of the principal which he could follow wherever it could be identified.

The point is close, but on the whole we have no hesitation in holding the complaint to state a cause of action *ex contractu.*

Even regarding the case as doubtful, it should be held to be an action *ex contractu,* not *ex delicto.*

If the theory that the complaint is *ex delicto* could be accepted, then the motion for nonsuit should have been granted for failure of proof. The plaintiff, so far from offering evidence that the money sent to defendant was to be held intact, affirmatively proved defendant received it as plaintiff's banker, put it to his own account and paid it out to one Morris, whenever authorized by telegrams from the plaintiff. Part of the money was remitted to the defendant by check from plaintiff and part paid to him by Morris for plaintiff. There is nothing whatever in the evidence to indicate an intention by plaintiff that the checks or money should be so kept as to be capable of identification.

Evidently the plaintiff should not be allowed to shut off all counterclaims on the theory that his complaint makes an action *ex delicto,* and recover on evidence tending to support only an action *ex contractu.* Such a result would be not only totally illogical, but clearly unjust in depriving the plaintiff of the benefit of proper counterclaim. The fact that the plaintiff is a non-resident not subject to the jurisdiction of the courts of defendant's domicile makes the injustice more manifest.

But as we have held the action to be *ex contractu,* and the evidence sustained the complaint viewed in that light, the motion for a nonsuit was properly refused.

It does not follow, however, from holding that the action was *ex contractu* and subject to a proper counterclaim, that the Circuit Judge was in error in sustaining a demurrer to such a counterclaim as is here set up, refusing to admit evidence in support of it and directing a verdict for plaintiff.

The defendant's allegation is that he had deposited money as margins on contracts for pretensive future deliveries with certain persons conducting a bucket shop for plaintiff, and that plaintiff had failed to carry out the contracts and refused to repay him the margin. There is no allegation that defendant paid over the sum mentioned in

the counterclaim to the plaintiff, on account of a loss sustained by reason of such contracts, and the limitation of three months provided by section 2312 of Civil Code, therefore, has no application. The claim falls manifestly under the second subdivision of the section, being made against the plaintiff as a middleman who had accepted the plaintiff's money for the purpose of making such contracts. The two provisions of the statute are distinguished in *Sanders* v. *Phelps,* 53 S. C., 173; 31 S. E., 54. To an action to recover such margin there is no statutory limitation except that of six years provided by the Code of Procedure. Had the plaintiff become indebted to the defendant by reason of the deposit of these margins, or on an ordinary note for borrowed money, or in any other way after receiving the trust deposit from the plaintiff, we think he would be entitled to require the plaintiff to pay at the same time that he exacted the payment, and a counterclaim setting out these facts would be good. This would be no repudiation of the trust contract but merely requiring the plaintiff to do justice according to the changed conditions, brought about by his own act in becoming indebted to defendant. But according to the answer, the alleged debt set up as a counterclaim was due to defendant when he received the trust fund, and he promised to disburse this fund on plaintiff's order, as his agent, in full view of the alleged debt to him. The promise so to disburse it included a promise not to set up any exisiting debt against it. In the absence of fraud or mistake the defendant cannot be allowed to make a contract and avail himself of its repudiation. To sustain a counterclaim would be to sanction repudiation of a trust contract, amounting to fraud. Denying the right of counterclaim in such a case is nothing more than requiring fidelity of the agent to his trust.

The judgment of the Court is, that the judgment of the Circuit Court be affirmed.