17176

WILLIE E. BRAMLETT, N. A. HACK, THOMAS W. BUTLER and C. J. HUDSON, Individually, and as members of McCarter Presbyterian Church, bring this action not only for themselves but also as representatives of all other members of said church, Respondents v. E. W. YOUNG and MANNING JONES, individually, and (1) as ruling elders of McCarter Independent Presbyterian Church, not only for themselves but also as representatives of all other ruling elders of said church, (2) as members of said McCarter Presbyterian Church, not only on their own behalf but as representatives of all other members of said church, and (3) as Trustees of the respondent, The Bible Mission; O. C. Baston, Individually and (1) as a deacon of McCarter Independent Presbyterian Church, representing not only himself but all other deacons of said church, and (2) as Trustee of the respondent The Bible Mission; The Bible Mission, a South Carolina religious corporation; and Edgar Watkins, as Trustee of the said The Bible Mission (of whom the said Edgar Watkins, as Trustee of the said The Bible Mission, is a respondent), Appellants.

(93 S. E. (2d) 873)

520

*Messrs. C. S. Bowen* and *Williams & Henry,* of Green-ville, and *Henry E. Davis,* of Florence, *for Appellants,*

524

*Messrs. Leatherwood, Walker, Todd & Mann,* and *Clarence A. Cappell,* of Greenville, *for Respondents,*

June 21, 1956.

Moss, Justice.

The McCarter Presbyterian Church, located in Greenville, South Carolina, was organized in 1895 as a member of the Presbyterian Church in the United States, and was a member of the Enoree Presbytery, a judicatory of said denomination. McCarter Presbyterian Church, since its organization, was part of and subject to the government and control of the Enoree Presbytery and the Synod of South Carolina.

In 1905 and 1909 the trustees of McCarter Presbyterian Church acquired, in fee simple, two pieces of real estate. Upon this land a church building was erected and used continuously by the church for many years.

On October 19, 1947, at a congregational meeting of McCarter Presbyterian Church, a motion was made, seconded and passed "for the Trustees to deed all church property to The Bible Mission Corporation, for a sum of money of Seven Hundred Fifty & 00/100 ($750.00) Dollars, and other consideration." No such deed was executed. The Bible Mission was a religious corporation, whose officers or trustees were all officers of McCarter Presbyterian Church. The Bible Mission Corporation was part and parcel of McCarter Presbyterian Church and was incorporated because there was some talk of the Southern Presbyterians and the Northern Presbyterians uniting or merging and it was the purpose of the conveyance to put the property beyond the reach of the Presbyterian Church in the United States of America.

On January 11, 1948, which was after the passage of the aforementioned resolution, the McCarter Presbyterian Church building was totally destroyed by fire. Thereafter, the congregation started working towards the construction of a new church building on the same site. Funds were collected from the Sunday School treasury and the regular church treasury and transferred to McCarter Presbyterian Church Building Fund. Various persons were solicited and contributions made to such fund. No contributions were made to The Bible Mission Corporation for such purpose. The new church building was erected at a cost of approximately $17,000.00.

On November 7, 1949, the Trustees of McCarter Presbyterian Church conveyed one of the tracts of land belonging to the church to the Bible Mission for a consideration of $1.00. It was testified by one of the trustees for McCarter Presbyterian Church that this deed was made in order to facilitate the obtaining of a mortgage loan so that the new church building could be completed. He was assured that the

property would not pass out of the control of the McCarter Presbyterian Church. No rent was ever paid to the Bible Mission by McCarter Presbyterian Church, nor was any ever charged or attempted to be collected. There was no change in the use and occupancy of the church building before or after the execution of the deed.

McCarter Presbyterian Church was without a regular pastor, and Rev. Douglas Parris, who was an instructor at Bob Jones University, was approved by the Enoree Presbytery for several six months periods as a supply pastor. Finally, in 1953, the Presbytery notified McCarter Presbyterian Church that this arrangement could be no longer continued. Shortly thereafter, and on May 10, 1953, at a regular called meeting, the congregation of McCarter Presbyterian Church, which had a total membership of sixty-seven, voted 38 to 2 to withdraw from Enoree Presbytery. The Clerk of the Session of McCarter Presbyterian Church notified the stated Clerk of Enoree Presbytery of the congregational action and of the intention of the church to secede and to sever all relationship with the Presbyterian Church in the United States and of the intention to continue as the Mc-Carter Independent Presbyterian Church. It appears that a large sign was placed in front of the church building which read "McCarter Independent Presbyterian Church."

It appears that those who withdrew and seceded from Enoree Presbytery and Presbyterian Church in the United States constituted a majority of McCarter Presbyterian Church. However, there was a group of eleven members which remained loyal to Enoree Presbytery and the Presbyterian Church in the United States, and they petitioned the aid of the Presbytery. This loyal group of the old congregation was recognized by the Presbytery on September 22, 1953, as constituting McCarter Presbyterian Church. This group, with the aid of the Presbytery, has a minister, holds regular church services, and is conforming to the government and discipline of the Presbyterian Church in the United States.

This loyal group brought the present action to have themselves declared to be McCarter Presbyterian Church and entitled to the possession and control of the church property; and to have the court construe and reform the deed of the Trustees of McCarter Presbyterian Church to the Bible Mission so as to show that the premises are held by the Bible Mission, in trust, for the use and benefit of McCarter Presbyterian Church, and the minority group representing said church; and for a permanent injunction prohibiting the majority constituting the McCarter Independent Presbyterian Church, and each and every member thereof, from interfering with the rights of the minority group constituting the McCarter Presbyterian Church.

All of the defendants, with the exception of Edgar Watkins, as trustee of the Bible Mission, jointly answered the said petition, on behalf of themselves and as representatives of the other members of the church, denied the material allegations of the petition, demanded that the action be dismissed, and among other defenses alleged that the property was owned by the Bible Mission in fee simple, in its own right, and that the McCarter Presbyterian Church had no interest therein, and that since they and those whom they represented constitute a majority of the membership of the said church were not subject to being barred from the use and enjoyment of any property of said church, nor from participation in its possession and control. An answer was filed in behalf of Edgar Watkins, as Trustee of the said Bible Mission, admitting the allegations of the petition and joining in the prayer thereof.

This entire matter was referred to the Master in Equity for Greenville County. He conducted references and, thereafter, filed his report, finding that the petitioners, who constitute a minority of the McCarter Presbyterian Church, but who were loyal to the denomination and who had been recognized by Enoree Presbytery as constituting the McCarter Presbyterian Church, are entitled to the property of the church as against the appellants, who are a majority of the

former congregation but who have withdrawn from the denomination, severed all connection with the Presbytery, and in form and fact have constituted themselves an independent congregational type church, all without the consent or approval of Enoree Presbytery. He also found that the deed from the trustees of McCarter Presbyterian Church to the Bible Mission did not intend to convey away the title of McCarter Presbyterian Church to such property, but was intended to convey the title to the Bible Mission in trust for the use and benefit of McCarter Presbyterian Church, and that such deed should be reformed so as to show such intention. He also found that the premises should be surrendered to the group who remained loyal to the denomination, and that the appellants here should be enjoined from interfering directly or indirectly with the occupancy and use of the church premises and property.

Thereafter, the appellants filed Exceptions, seventy in number, to the Report of the Master. The Honorable W. B. McGowan, Judge of the Greenville County Court, after full and complete arguments, overruled appellants' exceptions to said report and affirmed such.

The appellants come before this Court on thirty exceptions to the judgment of the lower court. In addition thereto they have, for the first time, and without exceptions, questioned the jurisdiction of the Greenville County Court to hear and determine the issues raised in this case. They assert that the Greenville County Court has no jurisdiction for the reason that this action is one for the recovery of specific real property of a value of more than $5,000.00, thereby exceeding the jurisdictional limitations of the County Court. The respondents contend that this action is not one for the recovery of specific real property but is an action brought on the equity side of the Court for the reformation of a deed, for an injunction, and for the declaration that the appellants hold the church property in trust for the use and benefit of McCarter Presbyterian Church.

The jurisdiction of the Greenville County Court to hear and determine the issues presented by the pleadings in this cause must, of necessity, depend upon the nature of the cause of action sued upon, because if the action is one for the recovery of specific real property and its value exceeds the sum of $5,000.00, the Greenville County Court would have no jurisdiction, but if the action is one of equitable cognizance, then the County Court has unlimited jurisdiction.

The Greenville County Court has jurisdiction as is conferred by Section 15-654 of the 1952 Code of Laws of South Carolina, which provides:

"Said county court shall have concurrent jurisdiction with the court of common pleas in all civil cases and special proceedings, both at law and equity, except that such jurisdiction shall not extend to actions at law for the recovery of money only when the amount demanded in the complaint exceeds five thousand dollars or for the recovery of specific real and personal property when the value of such property exceeds five thousand dollars."

Even though the appellants did not raise the question of jurisdiction in the lower court, objection to the jurisdiction of the subject-matter may be made at any time during the progress of the action, and such jurisdiction cannot be waived or conferred by consent. Want of jurisdiction of the subject-matter may be taken advantage of at any stage of the proceeding. *Black v. Town of Springfield,* 217 S. C. 413, 60 S. E. (2d) 854; *Ladshaw v. Hoskins,* 204 S. C. 346, 29 S. E. (2d) 480; *Senn v. Spartanburg County,* 192 S. C. 489, 7 S. E. (2d) 454. We, therefore, conclude that the objection to the jurisdiction of the Greenville County Court is timely made in this court.

We must now consider what is the nature of the action stated in the complaint in this cause, whether such is a legal action or one for equitable relief. If we determine that the action is equitable, it follows that the Greenville County Court was a proper forum for the trial of this cause.

In the case of *Ogilvie v. Smith,* 215 S. C. 300, 54 S. E. (2d) 860, 862, this court, in an Opinion by Mr. Justice Oxner, said:

" 'The character of an action is determined by the complaint in its main purpose and broad outlines and not merely by allegations that are merely incidental.' *Alford v. Martin,* 176 S. C. 207, 180 S. E. 13, 15. 'Allegations not in harmony with the theory of the pleading will be considered surplusage.' *Speizman v. Guill,* 202 S. C. 498, 25 S. E. (2d) 731, 737. 'If the character of the action appears with sufficient clearness in the body of the complaint, it must control, unaffected by the prayer for relief or the intention or characterization of the pleader.' *Speizman v. Guill, supra.* While the prayer constitutes no part of the plaintiff's cause of action, *Daniel v. Conestee Mills,* 183 S. C. 337, 191 S. E. 76, 'it is an element which may properly be considered in determining the legal or equitable character of an action, and, where the complaint states facts which would support either a legal or an equitable action, the relief demanded will ordinarily determine its character.' 1 C. J. S., Actions, § 54, page 1155. In *Speizman v. Guill, supra,* the Court said: 'In a case where it is material or necessary to determine which of two different remedies arising upon the same state of facts a party has elected to pursue, undoubtedly the prayer for relief may be considered at least as tending to indicate which remedy the plaintiff elected.'

"Considering the second cause of action in the light of the foregoing principles, we think that plaintiff has elected to proceed on the theory of a constructive trust. The circumstances under which such a trust arises are discussed at length in the following cases, some of them quite recent: *Bank of Williston v. Alderman,* 106 S. C. 386, 91 S. E. 296; *Greene v. Brown,* 199 S. C. 218, 19 S. E. (2d) 114; *All v. Prillaman,* 200 S. C. 279, 20 S. E. (2d) 741, 159 A. L. R. 981; *Dominick v. Rhodes,* 202 S. C. 139, 24 S. E. (2d) 168; *Searson v. Webb,* 208 S. C. 453, 38 S. E. (2d) 654. Under the authority of these decisions, we think the allega-

tions stated in the second cause of action, liberally construed, are sufficient to support the relief sought."

This Court has also announced another well established rule of pleading in the case of *Speizman v. Guill, supra* [202 S. C. 498, 25 S. E. (2d) 737], as follows:

" 'Where it is doubtful upon what theory the pleading was drawn, the Court will construe it according to theory it deems most in accord with the facts alleged. The pleading should be construed so as to prevent parties from being misled. Thus it has been said that the Court should consider what the opposite party had reason to understand was the issue tendered. The theory of the pleading is not determined from the legal verbiage or the name or style given to the pleading, or the epithets found therein, or from the statements or concessions of counsel which form no part of the record. Allegations not in harmony with the theory of the pleading will be considered surplusage. The Court will, when possible, sustain the theory intended by the pleader. But that a certain theory was evidently contemplated by the person who drew the pleading is of no avail as against the theory shown by the facts alleged.' 49 C. J., p. 118, § 110."

In the case of *Farmers' Union Mercantile Co. v. Anderson,* 108 S. C. 66, 93 S. E. 422, 424, the following rule was announced:

"Under the old practice each form of action had distinctive earmarks, so that there was little or no difficulty in determining what kind of action the pleader intended to bring. But the Code requires only a statement of the ultimate facts constituting the causes of action; and, as precisely the same facts may give rise to an action *ex contractu* or *ex delicto,* at the pleader's election, and as the pleader is not required to name his action, or to specifically declare his intention or indicate his election, it is often difficult to determine what kind of action was intended. In doubtful cases the question must be determined by the substance of the allegations, and such other facts and circumstances as may throw light upon

the intention; every reasonable intendment being indulged in favor of that conclusion which will result in doing substantial justice between the parties. *V. P. Randolph & Co. v. Walker, supra* [78 S. C. 157, 59 S. E. 856]; Pom. Rem. 567-573, 801."

There is still another rule that should be applied in this case. In *Moore v. Hardaway Contracting Co.,* 193 S. C. 299, 8 S. E. (2d) 511, 514, this Court said:

"The appeal must be considered in the light of the general rule that the theory pursued in the trial Court with respect 'to the relief sought and grounds therefor', must be adhered to in the appellate Court. *Mellette v. Atlantic Coast Line R. Co.,* 181 S. C. 62, 186 S. E. 545; *Wilson v. Southern Ry. Co., Carolina Division,* 123 S. C. 399, 115 S. E. 764; *Iler v. Jennings,* 87 S. C. 87, 68 S. E. 1041; *McKittrick v. Greenville Traction Co.,* 84 S. C. 275, 66 S. E. 289; *Cothran v. Knight,* 45 S. C. 1, 22 S. E. 596."

This Court has held that where an action is brought for the construction and reformation of a deed that such is of an equitable nature. *Wolf v. Hayes,* 161 S. C. 293, 159 S. E. 620.

It has also been held that the question of whether property is impressed with a trust must be determined in equity. *Fant v. Easley Loan & Trust Co.,* 170 S. C. 61, 169 S. E. 659; *Epworth Orphanage v. Long,* 199 S. C. 385, 19 S. E. (2d )481, 482, and from said case we quote the following:

"Trusts have long and broadly been a field for the jurisdiction of equity. 'Lord Coke stated (4 Institute, 84) that trusts were within the jurisdiction of the court of chancery * * *. However this may have been, it is held at the present time that courts of equity may take cognizance of cases involving trusts and furthermore that equity jurisdiction thereover is exclusive.' 19 Am. Jur., 152. From pages 154, 155 of the same volume of that work we further quote: 'If the specific subject-matter of a trust has been disposed of by

the trustee and its identity is traceable into substituted property or funds, a suit in equity may be maintained to enforce a trust therein, unless it has passed into the possession of an innocent purchaser. The rule is that equity will follow the fund regardless of where it may be found.' "

The complaint in this action demands that the McCarter Independent Presbyterian Church and each member thereof, and the Bible Mission be permanently enjoined from interfering with the occupancy and use of the church premises by the respondents herein. This sets forth an action for equitable relief by way of injunction. *Atlantic & Charlotte Air Line Ry. Co. v. Victor Mfg. Co.,* 79 S. C. 266, 60 S. E. 675. See also 28 Am. Jur. p. 314, Injunction, para. 123.

In the case of *Gibbes v. Elliott,* 26 S. C. Eq. 327, 5 Rich Eq. 327, it was held that a court of equity has no authority, in general, to try questions of title to lands, where the parties claim by distinct titles; but where the whole dispute is upon the construction of a will, or other written instrument, under which both parties claim, the court has jurisdiction to determine the rights of the parties.

This case was tried in the lower court upon the theory that the action was one for the reformation of a deed and also to have the court declare that the church property was held in trust for the benefit of the membership of the McCarter Presbyterian Church, and for an injunction to prevent the McCarter Independent Presbyterian Church and its members, and the Bible Mission from interfering with the use and occupancy thereof by the respondents herein, and the recovery of possession of the land being merely incidental, the cause is one in equity. Where this cause has been tried in the lower court upon the theory as above stated, the respective parties cannot then change in this court the theory upon which the case was tried in the lower court. In the pleadings and throughout the trial of this cause in the lower court, all of the parties by the substance of their pleadings and the evidence introduced showed that they rec-

ognized this case as one for reformation of a deed, and to have the court declare that the church property was held in trust for the benefit of the respondents herein, and for an injunction to prevent the appellants from any interference with said property, and not one for the recovery of specific real property. We, therefore, hold that the action is one in equity and the Greenville County Court had jurisdiction to hear and determine all issues.

Where a court of equity has asumed jurisdiction of a ██ cause it will retain such jurisdiction to dispose of all issues within the scope of the pleadings, including the granting of whatever relief may be required to render the judgment of the court effective. *Holly Hill Lumber Co., Inc. v. McCoy,* 203 S. C. 59, 26 S. E. (2d) 175, 148 A. L. R. 285; *Parker Peanut Co. v. Felder,* 207 S. C. 63, 34 S. E. (2d) 488; *Coleman v. Coleman,* 208 S. C. 103, 37 S. E. (2d) 305.

The appellants assert that the respondents herein had ██ ██ no legal capacity to bring this action. An examination of the petition shows upon its face the capacity in which the respondents brought the action. Hence, since the capacity in which the respondents instituted this action appears upon the face of the complaint, if the appellants desired to take advantage of or question the right to bring the action, the appellants' remedy was to demur to the complaint, as is provided for in Section 10-642 of the 1952 Code of Laws. This they did not do, and since the objection was not made by demurrer, it is considered waived. *Neel v. Clark,* 193 S. C. 412, 8 S. E. (2d) 740. If the fact that the respondents had no legal capacity to sue did not appear upon the face of the petition, then the appellants should take advantage of such by way of answer. *Baker v. Hartford Fire Insurance Co.,* 195 S. C. 373, 11 S. E. (2d) 434. .

In the case of *Kirton v. Howard,* 137 S. C. 11, 134 S. E. 859, 869, it is said:

"It has also been determined that where objection is not taken by demurrer or answer 'that the plaintiff has not

legal capacity to sue,' such objection cannot be taken advantage of under a general denial."

There can be no question but that the eleven loyal members of the McCarter Presbyterian Church had a sufficient interest therein to bring an action to determine their rights concerning the church property. The only issue raised by the appellants as to the capacity of the respondents to bring this action, is couched in the following language:

"That petitioners are not the real parties in interest, are not paying, nor are they to pay, any of the fees, costs or expenses of this action, but have been persuaded into permitting this action to be brought in their names by others who are not members of the McCarter Presbyterian Church * * *"

The entire pleadings admit that the respondents are members of McCarter Presbyterian Church. This being true, they had a right to institute this action to protect such rights as they had. It appears upon the face of the pleadings that it is a class action and is authorized under Section 10-205 of the 1952 Code of Laws of South Carolina. One of the respondents is "N. A. Hack". The agreed statement in reporting the congregational vote to withdraw from Enoree Presbytery states "whether the two opposing members, Mr. N. A. Hack and his wife, Gladys G. Hack, agreed, and when the votes were counted, to concur and go along with the majority, is a matter in controversy." It, therefore, appears from the agreed statement of fact that N. A. Hack was a member of the McCarter Presbyterian Church, that he participated in the congregational meeting, and hence he has sufficient legal capacity to maintain this action individually and as a representative of all other members of the church.

The appellants have posed a great number of exceptions to the rulings of the lower court. These exceptions will not be discussed individually or in detail. When a congregation of the Presbyterian Church decides in a congregational meeting, duly called and held in the manner prescribed by

the form of government of the Presbyterian Church to withdraw from the Presbytery of which it is a member, and from the Presbyterian Church in the United States, are they entitled to keep the property of the church as against the claim of a minority group who did not vote to withdraw but remained loyal to such Presbyterian Church?

We should keep in mind the authority of the civil courts to determine the issue here involved. In the case of *Turbeville v. Morris,* 203 S. C. 287, 26 S. E. (2d) 821, 827, the authority of the civil courts, with reference to a church controversy, is fully outlined, as follows:

"The civil courts will not enter into the consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters. To assume such jurisdiction would not only be an attempt by the civil courts to deal with matters of which they have no special knowledge, but it would be inconsistent with complete religious liberty, untrammeled by state authority. On this principle, the action of church authorities in the deposition of pastors and the expulsion of members is final. Where, however, a church controversy necessarily involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights, under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it."

See also *Morris St. Baptist Church v. Dart,* 67 S. C. 338, 45 S. E. 753.

Succinctly and concisely stating the rule as we gather it from the foregoing quotation, civil courts have no jurisdiction of ecclesiastical questions and controversies, but do have jurisdiction as to civil, contract

and property rights which are involved in a church controversy.

Prior to May 10, 1953, the entire membership of ■ McCarter Presbyterian Church, and the church itself, was an integral part of Enoree Presbytery and the Synod of South Carolina of the Presbyterian Church in the United States. At the May 10, 1953 meeting, a majority of the membership of McCarter Presbyterian Church withdrew therefrom. There can be no question that these members had the right to secede and disassociate themselves from Enoree Presbytery and the Presbyterian Church. The right of a person or a group of persons to worship God in such manner and form as they may desire, and with or without affiliation with any particular denomination, is guaranteed by Art. 1, Section 4 of the 1895 Constitution of South Carolina, and is likewise guaranteed by the First Amendment to the Constitution of the United States.

When a division occurs in a church congregation, ■ which is always unfortunate, the question as to which faction is entitled to the church property is answered by determining which of the factions is the representative and successor to the church as it existed prior to the division or schism, and that is determined by which of the two factions adhere to or is sanctioned by the appropriate governing body of the denomination. It is a question of identity.

The appellants cannot now comprise McCarter ■ Presbyterian Church because they have seceded and disassociated themselves by their voluntary action and vote, from any connection with Enoree Presbytery and the Presbyterian Church in the United States. They are now engaged in worship as an independent church. The appellants assert that even though they are no longer affiliated with the Presbyterian Church in the United States, yet they contend that they maintain and observe the doctrine and tenets of the church, and assert also that they are still

a Presbyterian Church. There can be no Presbyterian Church in the United States without an affiliation with a Presbytery. A Presbyterian Church can be organized only by authority of a Presbytery. A minister cannot be employed or called to serve a Presbyterian Church without the approval of the Presbytery, of which such church is a member. In the case of *Wilson v. Presbyterian Church of John's Island, etc.,* 19 S. C. Eq. 192, 2 Rich. Eq. 192, in an opinion by Chancellor Johnson, he states: "The Rev. Mr. Forrest, the witness, was right, therefore, in saying that there could be no Presbyterian Church without a Presbytery." It is therefore necessary, in order to have a Presbyterian Church to be affiliated with a Presbytery, thereby subjecting the church and its membership to the authority of the judicatories of the church. The government of the Presbyterian Church is exercised by and through an ascending series of judicatories, known as Church Sessions, Presbyteries, Synods and a General Assembly. The minority group, who are the respondents herein, have submitted themslves to the judicatories of the Presbyterian Church of the United States, and have been recognized by such as a duly organized church. They thereby have the identity necessary to make of them the McCarter Presbyterian Church.

In the case of *Kelly v. McIntire,* 123 N. J. Eq. 351, 197 A. 736, 741, the record shows a deed was made to a local church without any specific mention that the property was to be devoted to any particular purpose. A controversy arose in the church and a majority of the members of the Collingswood Presbyterian Church voted to withdraw from the West Jersey Presbytery. In the resolution of withdrawal it was provided that the church should continue to function as the Collingswood Presbyterian Church, and that the Elders and Trustees should be responsible to the congregation and the pastors and the other church officers to continue their usual duties and responsibilities. There was a loyal minority, which the court held was entitled to the

property, and that the withdrawing majority had no interest therein. The Court said:

"The defendants' effort has been to prove that the ministration of the Rev. Mr. McIntire and of the Session of the Collingswood Church have been conducted in accordance with the only true and faithful interpretation of the constitution and discipline of the Presbyterian Church in the United States of America. I was impressed throughout the trial of this cause with the honesty and sincerity the defendants, and with the conscientious zeal with which they pursued their course of action. It is difficult, however, to reconcile, in law, their attempted withdrawal from, and repudiation of, the jurisdiction and authority of the church under which they were organized and under which they acquired valuable property rights, with the right they now assert to hold that property as an independent body free from all trust responsibility to the church that gave them life.

"The principle seems to be firmly established that a congregation belonging to a religious denomination and subject to the constitution, faith, and doctrines thereof cannot use its property for a purpose other than that sanctioned by the denomination. The instant case presents the anomalous situation of a large part of the congregation of the Collingswood Presbyterian Church renouncing and refusing submission to the judicatories of the Presbyterian Church in the United States of America, and at the same time endeavoring to maintain an independent church which, they say, adheres to the fundamental doctrines of faith of the Presbyterian Church in the United States of America, claiming that the latter church has become disloyal to those fundamental doctrines."

In the case of *Schilstra v. Van Den Heuvel,* 82 N. J. Eq. 155, 90 A. 1056, 1059, which involved a Presbyterian Church, we find the following pertinent language:

"Independent churches may do what they please with their property, provided legal action is taken to that end;

but when a religious society becomes affiliated with other religious societies, and they unite to construct and maintain for their mutual advantage higher judicatories to which they subject themselves, then the individual society or worshipping unit holds its property and temporalities under an obligation to continue the affiliation until it can be broken by mutual consent; and if secession is attempted by a faction, however large or however small, such faction will not be allowed to carry the church property with it, certainly not so long as there is a loyal body which is recognized by the superior judicatory."

In the case of *Chatfield v. Dennington,* 206 Ga. 762, 58 S. E. (2d) 842, 844, we find this succinct statement applicable to the situation here:

"If the members of a church abandon its tenets, or if they adhere to the doctrines of the church but abandon the organization, they lose their interest in the property of the church. Withdrawal from a church and uniting with another church or denomination is a relinquishment of all rights in the church abandoned. Code, Sec. 22-406. *Mack v. Kime,* 129 Ga. 1, 21, 58 S. E. 184, 24 L. R. A., N. S., 675; *Everett v. Jennings,* 137 Ga. 253, 73 S. E. 375; *Tucker v. Paulk,* 148 Ga. 228, 96 S. E. 339; *Bouldin v. Alexander,* 15 Wall. 131, 82 U. S. 131, 21 L. Ed. 69, 71."

We find this statement, which is also applicable to the present situation, in 45 Am. Jur. p. 775, Religious Societies, Section 66:

"Where property is acquired by a religious society and the conveyance under which the title passes, imposes no limitation upon the uses to which the property is to be devoted, so long as any existing organization can be ascertained to be that to which the property was granted, or its regular and legitimate successor, it is entitled to use of the property. In case of a schism in such an organization, no inquiry will be had into the existing religious opinions of those who comprise the legal and regular organizations;

rather, the fundamental inquiry is one of identity of organizations—in other words, which of the rival factions is the true representative and successor of the society as it existed prior to the schism. In general, that question is to be determined by ascertaining which of the two factions adheres to or is sanctioned by the governing body of the society, and those who adhere to the acknowledged organization are entitled to the use of the property, whether or not they adhere to the doctrines originally professed."

And again from 45 Am. Jur. p. 777, Religious Societies, Section 68:

"In case of a controversy raised by a schism or division as to rights in property acquired for the general use of a religious congregation which is itself part of a general organization of some religious denomination with which it is more or less intimately connected by religious views and ecclesiastical government, the question of identity is again the criterion in determining which faction is entitled to the property, and is again to be decided by ascertaining which of the two factions adheres to the governing body of the society. The governing body of such a society is generally some external organization to which the local church is subordinate; hence, the application of the criterion of identity in this class of cases calls for adherence to or sanction by such external organization, irrespective of the action of the majority of the local body; for while there can be no doubt of the right of individuals to withdraw from a religious society of which they have been members and to form a new society with such ends and government as they please, they are not endowed with the right of taking with them property consecrated to other uses. * * *

"* * * Therefore, even in the absence of an express and specific trust, an attempt by a faction, whether a majority or a minority of a local body, to sever its denominational or ecclesiastical connections without the assent of the governing body of the general society can have no effect on property rights, and the civil courts will award the property to

the faction which remains loyal to the denominational or ecclesiastical connection existing prior to the division, and the seceders, although a majority, will be held to have lost their rights to the church property."

Supporting the foregoing quotations from American Jurisprudence are the cases of *Mack v. Kime, supra; First Baptist Church v. Fort,* 93 Tex. 215, 54 S. W. 892, 49 L. R. A. 617; *Watson v. Jones,* 13 Wall. 679, 20 L. Ed. 666; *Clay v. Crawford,* 298 Ky. 654, 183 S. W. (2d) 797.

The leading case in the United States on the subject of who is entitled to the possession of the property in a Presbyterian Church, where a schism or division occurs, is that of *Watson v. Jones, supra,* and involved a church controversy in the Third or Walnut Street Presbyterian Church of Kentucky, arising out of the slavery conflict. It appears that in 1865 the General Assembly of the Presbyterian Church, the highest judicatory thereof, made a declaration of loyalty to the Federal Government, denouncing slavery. The Louisville Presbytery, the immediate superior of the Walnut Street Church, issued a declaration refusing obedience and calling for resistance to the alleged usurpation of authority by the General Assembly. The Louisville Presbytery divided, as did the Walnut Street Church, and the pro slavery group obtained admission to the Presbyterian Church of the Confederate States, now the Presbyterian Church in the United States. The other group remained loyal to the Presbyterian Church in the United States of America. The contest was over which of the groups was entitled to the Walnut Street Presbyterian Church property. The Court held that the group remaining loyal to the Presbyterian Church in the United States of America and recognized by the Presbytery was entitled to the property. The Court said:

"The case before us is one of this class, growing out of a schism which has divided the congregation and its officers, and the presbytery and synod, and which appeals to the courts to determine the right to the use of the property so acquired. Here is no case of property devoted forever by the

instrument which conveyed it, or by any specific declaration, of its owner, to the support of any special religious dogmas, or any peculiar form of worship, but of property purchased for the use of a religious congregation, and so long as any existing religious congregation can be ascertained to be that congregation, or its regular and legitimate successor, it is entitled to the use of the property. In the case of an independent congregation we have pointed out how this identity, or succession, is to be ascertained, but in cases of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments. There are in the Presbyterian system of ecclesiastical government, in regular succession, the Presbytery over the session or local church, the Synod over the Presbytery, and the General Assembly over all. These are called in the language of the church organs, 'judicatories', and they entertain appeals from the decisions of those below, and prescribe corrective measures in other cases.

"In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline or of faith, or ecclesiastical rule, custom or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them."

And again from *Watson v. Jones, supra*:

"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establish-

ment of no. sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all of the individual members, congregations and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if anyone aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeal as the organism itself provided for."

And again from *Watson v. Jones, supra*:

"But we need pursue this subject no further. Whatever may have been the case before the Kentucky Court, the appellants in the case presented to us have separated themselves wholly from the church organization to which they belonged when this controversy commenced. They now deny its authority, denounce its action and refuse to abide by its judgments. They have first erected themselves into a new organization, and have since joined themselves to another totally different, if not hostile, to the one to which they belonged when the difficulty first began. Under any of the decisions which we have examined, the appellants, in their present position, have no right to the property, or to the use of it, which is the subject of this suit."

The case of *Watson v. Jones* was cited with approval and the doctrine therein ordered reaffirmed by the Supreme Court of the United States in the case of *Kedroff v. Saint Nicholas Cathedral,* 344 U. S. 94, 73 S. Ct. 143, 97 L. Ed. 120.

In the case of *Watson v. Jones, supra,* the United States Supreme Court cites the South Carolina case of *Harmon v. Dreher,* 17 S. C. Eq. (Speers Eq.) 87, and *Wilson v. Presbyterian Church of John's Island, etc., supra.* We now refer to these cases.

In the *Harmon v. Dreher case,* two factions claimed that they constituted the true congregation of St. Peter's Church in Lexington County, a Lutheran congregation and a member of the Synod of that church. The schism and division arose over the expulsion of the minister by the Synod. The adherents of the minister undertook to close the church against that portion of the congregation that adhered to the Synod, and executed a deed attempting to vest the title of the property in their own faction. The question for determination was which of the parties constituted the true church of St. Peter's. This court in adopting the circuit decree approved the following holding of the lower court:

"If a portion secede, and the rest, however small in number, adhere, the adherents, by their fidelity, secure their corporate existence, and are entitled to all the privileges and property of the corporation."

In the case of *Wilson v. Presbyterian Church of John's Island, etc., supra,* which we find to be conclusive of the issue here, the facts are that a bequest had been made, under a will for the maintenance of a minister of the Gospel, according to the Presbyterian profession, on John's Island. The Presbyterian Church on John's Island, for the benefit of which the trust was created, was in regular connection with the "Charleston Union Presbytery" until 1838, when by resolution of its members adopted by twelve to three, it was declared an "Independent Presbyterian Church, absolved from all connection with the Presbytery and every other ecclesiastical body." The majority remained in possession of the funds and property of the church. The minority organized themselves as a church and were recognized by the Presbytery, the Synod and the General Assembly of the church, as the Presbyterian Church of John's Island. The

court in holding that the minority group constituted the Presbyterian Church on John's Island and were entitled to the church property and funds, said:

"* * * But they have thrown off their allegiance to the Presbytery, and all other judicatories of the Presbyterian Church, and the question is, whether they now answer the description of the will, as the persons intended to take.

"A Presbyterian congregation, with its officers, pastor, elders and deacons, is said to be a complete organization in itself, but the church authorities all agree that it is not independent. Baird, in his work on religion in America, p. 234, chap. 5, says that "it is a part of an extended whole, living under the same ecclesiastical constitution, and therefore subject to the inspection and control of the Presbytery, whose business is to see that the standards of doctrine and rules of discipline are adhered to by all the separate churches under its care. It is the court of review and control, over all the sessions of the several churches within its bounds. The supervising body, bound to see that the pastors are faithful in the discharge of their duties, having also authority to license and ordain candidates for the ministry', etc. To the Presbytery is superadded the higher judicatories of Synods and General Assemblies, as the means of preserving the standards of doctrine and discipline on a more extended territorial scale.

"Such has been the organization of the Presbyterian Church in Scotland, from the time of John Knox to this day, and has been substantially followed by the Presbyterian Church in England and the United States."

And again:

"* * * The Rev. Mr. Forrest, the witness, was right therefore, in saying that there could be no Presbyterian Church without a Presbytery. According to the form of government, no congregation can regularly call a minister, nor can a minister be ordained to a particular church, but through the Presbytery, and that upon his professing to approve of the

government and discipline of the Presbyterian Church, and consenting to receive and adopt the confession of faith of the church, etc. The congregation, on their part, promising, among other things to 'submit to him in the due exercise of discipline.' In this way, and in this alone, can a minister of the Gospel, according to the Presbyterian profession, be regularly called, and the people (the congregation) committed to his care and pastoral inspection—and it follows, that without it, a Presbyterian Church could not be perpetuated. The Presbytery could not ordain a minister, nor commit a people to his care and inspection. The Independent churches, on the contrary, maintain that each congregation of christians, that meet in one house for public worship, is a complete church, has sufficient power to act and perform every thing relating to religious government within itself, and is in no respect subject or accountable to other churches. (Buck's Theo. Dic'n., Article-Independents.) And although they may profess the same faith, teach the same doctrines, and practice the same ordinances as another sect, governed by different rules, they are always marked by something to distinguish them from each other, most frequently by some epithet characteristic of their form of government and discipline. The defendants have assumed the name and character of an Independent church, by which they are distinguished from the Presyterian church, as clearly as the Roman Catholic Church is from the Protestant Episcopal Church; and it would be a perversion to suppose that by the terms 'minister of the Gospel, according to the Presbyterian profession,' the testator meant a minister of an Independent church."

The Court concluded:

"* * * It was, therefore, the members of the church, and their successors, members of the church, who were incorporated, and the defendants having seceded from it, are no longer corporators, and the disposition of these funds belongs to the complainants, who remain members of the church."

Se also in this connection the cases of *Turbeville v. Morris,* 203 S. C. 287, 26 S. E. (2d) 821; and *Middleton v. Ellison,* 95 S. C. 158, 78 S. E. 739.

We, therefore, conclude that the respondents herein are the true congregation of the McCarter Presbyterian Church, and as such they are entitled to exercise all of the rights belonging to a Presbyterian Church, including the right to have the deed from the said church to the Bible Mission reformed to show that McCarter Presbyterian Church is the true owner of the property described in said deed, and that such property is impressed with a trust for the benefit of McCarter Presbyterian Church and its members. The respondents are entitled, also, to an injunction preventing the appellants from directly, or indirectly, interfering with the occupancy and use of the church premises and property. The respondents are likewise entitled to the possession of the said property.

We have given thorough consideration to the record, the briefs of counsel and all of the questions raised by the appellants. We conclude that no error was committed by the lower court and that all issues of law and fact were properly decided. We, likewise, conclude that the jurisdictional questions raised in this court, without exceptions being made in the lower court, are also without merit.

The judgment of the lower court is affirmed.

Affirmed.

OXNER and LEGGE, JJ., and T. B. GRENEKER and J. M. BRAILSFORD, JR., Acting Associate Justices, concur.